GRACELAND CORP., Respondent, *v.* CONSOLIDATED LAUNDRIES CORPORATION, Appellant.

First Department, December 18, 1958.

*Chester E. Kleinberg* of counsel (*Myron P. Gordon*, attorney), for appellant.

*Stanley Law Sabel* for respondent.

BREITEL, J. Defendant laundry appeals from a judgment granting to plaintiff apartment house owner a permanent injunction and nominal damages following a trial at Special Term. Involved is the obstruction by the laundry of the north sidewalk of East 94th Street, between First and Second Avenues in the City of New York. The laundry parks and stores its trucks on the pedestrian sidewalk in front of its own building. Plaintiff owns three partially renovated "new law" tenement houses

on the same side of the street adjacent to the laundry. The issue in the case is whether the owner is entitled to enjoin the illegal use of the sidewalk by the laundry.

The laundry contends that, although it be assumed that its use is illegal (which it denies), and that such use constitutes a public nuisance, nevertheless, the adjacent owner is debarred from any private remedy because it cannot satisfy the legal requirement of showing special damage.

In substance the judgment should be affirmed, although it should be modified to make clear that the laundry is permitted to use the sidewalk for loading and unloading its commercial vehicles for reasonable periods of time under the provisions of the Administrative Code of the City (Administrative Code of the City of New York, § 82d7–15.0, subd. a, par. 2). Under the rules which obtain in regard to bringing private actions to enjoin a public nuisance, the owner has made a sufficient showing.

The laundry has operated at the site in question for some 25 years. It claims to have used the sidewalk in the same manner for 10 years. The owner purchased its property in late 1955 and remodeled the lower stories in early 1956. The property is used and rented as a multiple dwelling, and the owner claims that its rental value has been adversely affected by the obstruction of the adjacent sidewalk. To prove this the owner offered the testimony of a real estate expert and the rentals obtained from the entire property.

The laundry is, even by city standards, a large one. It uses large trucks, and the photographs submitted in evidence show that these trucks and some passenger automobiles are parked and stored on the public sidewalk. It is clear that this occurs while the trucks are not being loaded or unloaded. The effect is to block the sidewalk substantially with respect to access to the owner's premises, but not to preclude entirely pedestrian traffic. The court found, and it is not seriously disputed, that the practice is a continual one.

While it is variously argued that the laundry does no more than have its trucks " stand " while being loaded and unloaded, that is not the issue in the case. Such standing or parking is a permitted use. The issue turns on the finding supported by the evidence that the laundry " parks " and " stores " its vehicles on the pedestrian sidewalk.

The obstruction of a public street or sidewalk beyond the reasonable uses permitted to abutting owners is a public nuisance. (Administrative Code, §§ 82d7–15.0, 755(2)–4.0; Penal

Law, §§ 1530, 1532.) In the absence of special damage to another, such public nuisance is subject only to correction at the hands of public authority. It is equally clear, however, that one who suffers damage or injury, beyond that of the general inconvenience to the public at large, may recover for such nuisance in damages or obtain injunction to prevent its continuance. This is old law. (*Callanan* v. *Gilman,* 107 N. Y. 360; Prosser, Torts [2d ed.], p. 403 *et seq.*; 10 McQuillin, Municipal Corporations [3d ed.], § 30.128; 66 C. J. S., Nuisance, § 78.)

While there has been suggestion that the obstruction of a street must be total before there is a remedy, the cases do not support such a total requirement. There must, of course, be a substantial impairment of the use of the street. This is exemplified by the very illustrations and the earlier precedents cited in the *Callanan* case (*supra*). Moreover, when the question has come up sharply, the courts have granted an injunction to a plaintiff although the obstruction was not total. (*Crooke* v. *Anderson,* 23 Hun 266; *Mann* v. *Groom,* 133 Misc. 260.)

In the *Crooke* case the pertinent facts are best stated as recited by the Presiding Justice (p. 268): "The plaintiff is the owner of land on Washington avenue, Brooklyn. The defendant is also an owner of land on the same avenue. The defendant has carried his fence into Washington avenue and his stoop, so that it leaves but eight feet for public travel instead of nineteen feet, as it is laid out to have. The fence erected compels persons who cross Malbone street cross-walk to the northwest corner of Washington avenue to go around this fence instead of keeping directly up Washington avenue. The access to plaintiff's property is thus peculiarly affected by this obstruction. The law is so well settled, that it needs no authority to be cited, that any person who is peculiarly injured by a public nuisance, may have his remedy in equity to abate the nuisance. The extent of this peculiar injury is not of the slightest consequence so far as the right of action is concerned. I think a fence, which compels the plaintiff to go around it in order to go to and from his premises situated one hundred and six feet from it, sufficient to give the right of action."

In the *Mann* case damages were allowed, albeit in a nominal sum, although all that was involved was the necessity for plaintiff to avoid defendant's automobile parked in the public highway. The court commented that whether or not there was sufficient room to pass around the offending automobile was immaterial so long as plaintiff's right to use the highway had been substantially obstructed. What is most important, how-

ever, is that in none of the cases which happened to have involved total obstruction on one side of the street (like the *Callanan* case, *supra,* or the equally well-known case of *Flynn* v. *Taylor* [127 N. Y. 596]) did the court hold, by way of *ratio decidendi* or otherwise, that the total obstruction was a precondition to private remedy.

As a matter of logic and common sense, the preceding analysis could hardly be otherwise. The key to the private remedy is special damage, and substantial obstruction may accomplish that result just as effectively, in some cases, as total obstruction. Of course, in other cases, it may well be that only total obstruction will be sufficient to incur special damage.

Of course, as already pointed out, the availability of a private remedy depends upon the existence of special damage. In that frame of reference the extent of the obstruction and the length of time that it subsists, as well as the balance of convenience among members of the public, are all relevant factors in determining either the fact of public nuisance or the incidence of special damage arising therefrom.

On the matter of special damage, moreover, there is no requirement that there be directness of such damage, or that there be any particular quantum, before there is a right to a private remedy, such as injunction. Thus, in the *Flynn* case (*supra*) which involved an obstruction of the sidewalk, it was emphasized that no direct interference with the plaintiff's premises or business had been shown. The pivotal circumstance was the diversion of pedestrians from the front of plaintiff's premises. It was held sufficient if the circumstances showed that plaintiff suffered some special damage not common to persons merely using the street for passage. This was also described as too obvious for reasonable dispute. The court added that the right to maintain the action did not depend on the amount of the special damage, provided it is established that the plaintiff must have sustained some material injury peculiar to himself. (See, Prosser, *op. cit.* p. 403 *et seq.*; 66 C. J. S., Nuisances, § 79.) In considering this aspect of the case one ignores, as the laundry properly argues, numerous other cases in which there have been successful recoveries in private actions for damages based on public nuisances where personal injuries were incurred (e.g., *Murphy* v. *Leggett,* 164 N. Y. 121), because the fact of personal injury is proof enough of special damage.

In the cases, almost always involved was a conflict between merchants or a conflict between a merchant and an owner of a

private dwelling. In this case the apartment house owner partakes of both merchant and owner of a private dwelling. Thus, in this case the owner provides dwellings for a price to members of the public. There was expert evidence, although it was hardly necessary, that a multiple dwelling the adjacent sidewalk to which is illegally obstructed by trucks and passenger automobiles will suffer depreciated rentals, and thereby reduce its value. This, of course, provides the commercial damage which has been stressed in some of the cases. But it is important to note that insofar as the owners of private dwellings are concerned there has not been such a necessity. In other words, a man may suffer special damage in his dwelling apart from commercial or even visible pecuniary damage, and that is just as actionable as the commercial damage suffered by a merchant from a diversion of potential customers.

The laundry has stressed, in a phrase not unfamiliar to the law, that the present owner has " come to the nuisance ", that is, it purchased the building knowing of the obstruction of the adjacent sidewalk by the laundry of at least 10 years standing. Considering the illegality of the use by the laundry this is hardly a persuasive position. Nor is it one addressed to any equity that the court is obliged to recognize (*Campbell* v. *Seaman*, 63 N. Y. 568, 584; see, Prosser, *op. cit.* p. 425). Interestingly enough, in the *Campbell* case, there was some evidence that the defendant's brickyard had been such, albeit not continuously, for some 25 years, the precise period of the laundry's ownership. Of greater significance is that the factor of "coming to the nuisance", and factor is all that it is, is most often applied to private rather than to public nuisance (e.g., *McCarty* v. *National Carbonic Gas Co.*, 189 N. Y. 40; *DeFile* v. *Hudson Republic Corp.*, 151 Misc. 256).

The laundry has also stressed that the owner's proper remedies lie with the Police Department of the City. One may not conjecture as to why that remedy has not sufficed during the period of the owner's interest in the adjacent property or the decade preceding. But it does not follow that because equity will decline to exercise its power where there is an adequate remedy at law, meaning an action at law, that, therefore, its doors are closed to petitioners because of the existence of an administrative remedy, an appropriate criminal proceeding — or even the availability of self-help. (4 Pomeroy, Equity Jurisprudence [5th ed.], § 1349; 1 High, Injunctions [4th ed.], §§ 745, 752, 762, 823; 66 C. J. S., Nuisances, pp. 831, 832, 886.) It suffices, in any event, that equity, traditionally, in this country

and in England, has granted injunctions in cases of public nuisance, although even from the days of the common law, indictment lay, and still lies, for a public nuisance (see, e.g., *Rex* v. *Cross,* 3 Camp. 224; 2 Story, Equity Jurisprudence [14th ed.], § 1248 *et seq.*). Indeed, if the situation were otherwise, there never could be an injunction to restrain a public nuisance, because, by its very nature and nomenclature, a public nuisance is one for which there is a public remedy (Penal Law, § 1530 *et seq.*).

The Administrative Code expressly authorizes an abutting owner to use the sidewalk for purposes of loading and unloading in connection with the business operated on its property. This involves reasonableness of use, both as to extent of obstruction and the time involved. (*Bolkin* v. *Levy,* 286 App. Div. 819; Administrative Code, § 82d7–15.0.) The laundry is entitled to the benefits of that permitted use. The injunction granted in this case, some might say, is too broad in that it forbids all parking or storing of trucks and other vehicles. This, of course, depends upon the construction attributed to the words "parking" and "storing". Howsoever that may be, so that there be no doubt about it, the injunction should be modified to provide that it does not extend to the uses permitted, namely, standing or parking for temporary loading and unloading and, as thus modified, the injunction should be sustained.

Accordingly, the judgment granting plaintiff a permanent injunction and nominal damages should be modified as herein indicated, and should otherwise be affirmed as so modified, on the law and in the exercise of discretion, the facts being affirmed, together with costs to plaintiff-respondent.

Settle order.

VALENTE, J. (dissenting). The judgment appealed from enjoins defendant perpetually from parking or storing trucks and other vehicles on the sidewalk in front of or adjacent to its plant on East 94th Street, perpendicularly to, or diagonally with, either the curb or the building line. Additionally, the judgment awards plaintiff nominal damages of $10. The court is agreed that the injunction is too broad and the majority would restrict the relief to enjoining defendant from parking or storing its trucks and vehicles on the sidewalk when not loading or unloading. But even as so modified, the injunction would be but a superfluous reiteration of the prohibitions now contained in sections 755(2)–4.0 and 82d7–15.0 of the Administrative Code of the City of New York.

I dissent and would reverse the judgment and dismiss the complaint because plaintiff did not prove any special injury resulting from the alleged unreasonable use of the public streets which was peculiar to plaintiff as distinct from that suffered by the general public. Under well-established rules, a plaintiff is not entitled to injunctive relief against unlawful use of the streets unless he has sustained a special injury. In the absence of such a showing, it is for the municipality to abate or enjoin any alleged nuisance. (10 McQuillin, Municipal Corporations [3d ed.], §§ 30.145, 30.153; 4 Pomeroy, Equity Jurisprudence [5th ed.], § 1349; Gavit-Blackstone's Comm., p. 610.) It is not the function of a court of equity to act as a super traffic police force. The existing statutes and traffic regulations afford sufficient protection to the plaintiff. The record does not disclose any attempt by plaintiff to invoke the enforcement of those statutes and regulations by the appropriate authorities.

In *Callanan* v. *Gilman* (107 N. Y. 360) which was an action to restrain defendant from obstructing the sidewalk in front of his store, there was proof that the sidewalk was entirely obstructed. The court there said (p. 370) : '' It is the undoubted law that the plaintiffs could not maintain this action without alleging and proving that they sustained special damage from the nuisance, different from that sustained by the general public; in other words, that the damage they sustained was not common to all the public living or doing business in Vesey street and having occasion to use the same.'' (See, also, *Cranford* v. *Tyrrell,* 128 N. Y. 341; *Flynn* v. *Taylor,* 127 N. Y. 596, 601.)

Special Term, without any elaboration of the basis for such a finding, concluded that '' plaintiff has sustained special and peculiar injury or loss in consequence '' of defendant's use of the streets. Yet Special Term found that the evidence as to the effect on the value of plaintiff's property was '' too conjectural and speculative to be made the basis for compensatory damages ''.

The only proof of special injury to plaintiff was the testimony of the managing agent of plaintiff's apartment houses wherein he opined that the rent rolls were depressed by reason of the parking of defendant's vehicles. A real estate expert, who testified for defendant, was of the opinion that plaintiff was receiving the maximum rentals for its apartments and that the parking situation had no adverse effect thereon. As the learned Special Term Judge concluded, the testimony of plaintiff's witness was purely speculative. It was mere conjecture and surmise, unsupported by any proof or the testimony of any

other person. In the absence of any substantial evidence of special injury, the injunction was unauthorized.

While proof of a definite amount of damages is not essential (*Callanan* v. *Gilman,* 107 N. Y. 360, *supra*) there nevertheless must be some evidence from which it can reasonably be inferred that some special damage was sustained by plaintiff as a consequence of the alleged nuisance. In *Flynn* v. *Taylor* (127 N. Y. 596, *supra*) and *Callanan* v. *Gilman* (*supra*), the circumstances of the blocking of the entire sidewalk next to a person's place of business of necessity must have occasioned a diversion of customer traffic and resulted in a loss of business to the complainants. In the instant case, there was no proof of total obstruction of the sidewalk, and consequently we cannot say that the partial blocking of the sidewalk in the same street on which plaintiff's apartment houses were located leads to the inescapable conclusion of resulting special damage. Although there were 110 tenants available, plaintiff failed to call any of them to testify to any inconvenience to them or anyone else as a consequence of the partial blocking of the sidewalks. And the testimony of plaintiff's only witness — and expert — does not permit such an inference.

The conduct of which plaintiff complains is singularly a matter for correction by the appropriate law enforcement agencies. It is not without significance that no reported cases involving grants of injunctions in similar matters have appeared ·in the books for many years. Quite clearly, the authorities have dealt with such complaints in adequate fashion. We should not open the door to pleas to a court of equity for injunctive relief unless there is sufficient evidence of special damage over and above the inconvenience to the general public. The showing in the instant case falls far short of the well-settled legal requirements.

It must also be pointed out that plaintiff became the owner of the three adjoining apartment houses in 1955. Defendant operates a large commercial laundry on East 94th Street between First and Second Avenues in the Borough of Manhattan, City of New York. It had continuously operated that laundry for 25 years before plaintiff purchased its properties. Plaintiff's agent admitted that he knew, during the last 10 years, that defendant had been backing up its trucks perpendicularly for loading and unloading. With knowledge of this practice, plaintiff nevertheless purchased the property. The requirement of a clear demonstration of special damage becomes even more warranted under such circumstances.

The judgment should therefore be reversed, and the complaint dismissed, with costs.

Botein, P. J., M. M. Frank and McNally, JJ., concur with Breitel, J.; Valente, J., dissents in opinion.

Judgment granting plaintiff a permanent injunction and nominal damages is modified as indicated in the opinion of Mr. Justice Breitel, and otherwise affirmed as so modified, on the law and in the exercise of discretion, the facts being affirmed, together with costs to plaintiff-respondent.

Settle order.