OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 The novel issues raised by these appeals — arising from construction-related disasters in midtown Manhattan — concern first, a landholder’s duty in negligence where plaintiffs’ sole injury is lost income and second, the viability of claims for public nuisance.
 

 Two of the three appeals involve the same event. On December 7, 1997, a section of the south wall of 540 Madison Avenue, a 39-story office tower, partially collapsed and bricks, mortar and other material fell onto Madison Avenue at 55th Street, a prime commercial location crammed with stores and skyscrapers. The collapse occurred after a construction project, which included putting 94 holes for windows into the building’s south wall, aggravated existing structural defects. New York City officials directed the closure of 15 heavily trafficked blocks on Madison Avenue — from 42nd to 57th Street — as well as adjacent side streets between Fifth and Park Avenues. The closure lasted for approximately two weeks, but some businesses nearest to 540 Madison remained closed for a longer period.
 

 In
 
 532 Madison Ave. Gourmet Foods v Finlandia Ctr.,
 
 plaintiff operates a 24-hour delicatessen one-half block south of 540 Madison, and was closed for five weeks. The two named plaintiffs in the companion case,
 
 5th Ave. Chocolatiere v 540 Acquisition Co.,
 
 are retailers at 510 Madison Avenue, two blocks from the building, suing on behalf of themselves and a putative class of “all other business entities, in whatever form, including but not limited to corporations, partnerships and sole proprietorships, located in the Borough of Manhattan and bounded geographically on the west by Fifth Avenue, on the east by Park Avenue, on the north by 57th Street and on the South by 42nd Street.” Plaintiffs allege that shoppers and
 
 *287
 
 others were unable to gain access to their stores during the time Madison Avenue was closed to traffic. Defendants in both cases are Finlandia Center (the building owner), 540 Acquisition Company (the ground lessee) and Manhattan Pacific Management (the managing agent).
 

 On defendants’ motions in both cases, Supreme Court dismissed plaintiffs’ negligence claims on the ground that they could not establish that defendants owed a duty of care for purely economic loss in the absence of personal injury or property damage, and dismissed the public nuisance claims on the ground that the injuries were the same in kind as those suffered by all of the businesses in the community. In
 
 5th Ave. Chocolatiere,
 
 plaintiffs’ additional claims for gross negligence and negligence per se were dismissed on the ground that plaintiffs could not establish a duty owed by defendants, and their private nuisance cause of action was dismissed on the ground that they could not establish either intentional or negligent wrongdoing.
 

 Goldberg Weprin & Ustin v Tishman Constr.
 
 involves the July 21, 1998 collapse of a 48-story construction elevator tower on West 43rd Street between Sixth and Seventh Avenues — the heart of bustling Times Square. Immediately after the accident, the City prohibited all traffic in a wide area of midtown Manhattan and also evacuated nearby buildings for varying time periods. Three actions were consolidated — one by a law firm, a second by a public relations firm and a third by a clothing manufacturer, all situated within the affected area. Plaintiff law firm sought damages for economic loss on behalf of itself and a proposed class “of all persons in the vicinity of Broadway and 42nd Street, New York, New York, whose businesses were affected and/or caused to be closed” as well as a subclass of area residents who were evacuated from their homes. Plaintiff alleged gross negligence, strict liability, and public and private nuisance.
 

 Noting the enormity of the liability sought, including recovery by putative plaintiffs as diverse as hot dog vendors, taxi drivers and Broadway productions, Supreme Court concluded that the failure to allege personal injury or property damage barred recovery in negligence. The court further rejected recovery for strict liability, and dismissed both the public nuisance claim (because plaintiff was unable to show special damages) and the private nuisance claim (because plaintiff could not show that the harm threatened only one person or relatively few).
 

 
 *288
 
 The Appellate Division affirmed dismissal of the
 
 Goldberg Weprin
 
 complaint, concluding that, absent property damage, the connection between defendants’ activities and the economic losses of the purported class of plaintiffs was “too tenuous and remote to permit recovery on any tort theory” (275 AD2d 614). The court, however, reinstated the negligence and public nuisance claims of plaintiffs
 
 532 Madison
 
 and
 
 5th Ave. Chocolatiere,
 
 holding that defendants’ duty to keep their premises in reasonably safe condition extended to “those businesses in such close proximity that their negligent acts could be reasonably foreseen to cause injury” (which included the named merchant plaintiffs) (272 AD2d 23) and that, as such, they established a special injury distinct from the general inconvenience to the community at large. Two Justices dissented, urging application of the “economic loss” rule, which bars recovery in negligence for economic damage absent personal injury or property damage. The dissenters further concluded that the public nuisance claims were properly dismissed because plaintiffs could not establish special injury.
 

 We now reverse in
 
 532 Madison
 
 and
 
 5th Ave. Chocolatiere
 
 and affirm in
 
 Goldberg Weprin & Ustin.
 

 Plaintiffs’ Negligence Claims
 

 Plaintiffs contend that defendants owe them a duty to keep their premises in reasonably safe condition, and that this duty extends to protection against economic loss even in the absence of personal injury or property damage. Defendants counter that the absence of any personal injury or property damage precludes plaintiffs’ claims for economic injury.
 
 [1]
 

 The existence and scope of a tortfeasor’s duty is, of course, a legal question for the courts, which “fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability”
 
 (Hamilton v Beretta U.S.A. Corp.,
 
 96 NY2d 222, 232 [quoting
 
 Palka v Ser
 
 
 *289
 

 vicemaster Mgt. Servs. Corp.,
 
 83 NY2d 579, 586]). At its foundation, the common law of torts is a means of apportioning risks and allocating the burden of loss. In drawing lines defining actionable duty, courts must therefore always be mindful of the consequential, and precedential, effects of their decisions.
 

 As we have many times noted, foreseeability of harm does not define duty
 
 (see, e.g., Pulka v Edelman,
 
 40 NY2d 781, 785). Absent a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm. This restriction is necessary to avoid exposing defendants to unlimited liability to an indeterminate class of persons conceivably injured by any negligence in a defendant’s act.
 

 A duty may arise from a special relationship that requires the defendant to protect against the risk of harm to plaintiff
 
 (see, e.g., Eiseman v State of New York,
 
 70 NY2d 175, 187-188). Landowners, for example, have a duty to protect tenants, patrons and invitees from foreseeable harm caused by the criminal conduct of others while they are on the premises, because the special relationship puts them in the best position to protect against the risk
 
 (see, e.g., Nallan v Helmsley-Spear, Inc.,
 
 50 NY2d 507, 518-519). That duty, however, does not extend to members of the general public
 
 (see, Waters v New York City Hous. Auth.,
 
 69 NY2d 225, 229). Liability is in this way circumscribed, because the special relationship defines the class of potential plaintiffs to whom the duty is owed.
 

 In
 
 Strauss v Belle Realty Co.
 
 (65 NY2d 399) we considered whether a utility owed a duty to a plaintiff injured in a fall on a darkened staircase during a citywide blackout. While the injuries were logically foreseeable, there was no contractual relationship between the plaintiff and the utility for lighting in the building’s common areas. As a matter of policy, we restricted liability for damages in negligence to direct customers of the utility in order to avoid crushing exposure to the suits of millions of electricity consumers in New York City and Westchester.
 

 Even closer to the mark is
 
 Milliken & Co. v Consolidated Edison Co.
 
 (84 NY2d 469), in which an underground water main burst near 38th Street and 7th Avenue in Manhattan. The waters flooded a subbasement where Consolidated Edison maintained an electricity supply substation, and then a fire broke out, causing extensive damage that disrupted the flow of electricity to the Manhattan Garment Center and interrupting
 
 *290
 
 the biannual Buyers Week. Approximately 200 Garment Center businesses brought more than 50 lawsuits against Con Edison, including plaintiffs who had no contractual relationship with the utility and who sought damages solely for economic loss. Relying on
 
 Strauss,
 
 we again held that only those persons contracting with the utility could state a cause of action. We circumscribed the ambit of duty to avoid limitless exposure to the potential suits of every tenant in the skyscrapers embodying the urban skyline.
 

 A landowner who engages in activities that may cause injury to persons on adjoining premises surely owes those persons a duty to take reasonable precautions to avoid injuring them
 
 (see, e.g., Weitzmann v Barber Asphalt Co.,
 
 190 NY 452, 457). We have never held, however, that a landowner owes a duty to protect an entire urban neighborhood against purely economic losses. A comparison of
 
 Beck v FMC Corp.
 
 (53 AD2d 118, 121,
 
 affd
 
 42 NY2d 1027) and
 
 Dunlop Tire & Rubber Corp. v FMC Corp.
 
 (53 AD2d 150, 154-155) is instructive. Those cases arose out of the same incident: an explosion at defendant FMC’s chemical manufacturing plant caused physical vibrations, and rained stones and debris onto plaintiff Dunlop Tire’s nearby factory. The blast also caused a loss of electrical power — by destroying towers and distribution lines owned by a utility — to both Dunlop Tire and a Chevrolet plant located one and one-half miles away. Both establishments suffered temporary closure after the accident. Plaintiffs in
 
 Beck
 
 were employees of the Chevrolet plant who sought damages for lost wages caused by the plant closure. Plaintiff Dunlop Tire sought recovery for property damage emanating from the blast and the loss of energy, and lost profits sustained during the shutdown.
 

 In
 
 Dunlop Tire,
 
 the Appellate Division observed that, although part of the damage occurred from the loss of electricity and part from direct physical contact, defendant’s duty to plaintiffs was undiminished. The court permitted plaintiffs to seek damages for economic loss, subject to the general rule requiring proof of the extent of the damage and the causal relationship between the negligence and the damage. The
 
 Beck
 
 plaintiffs, by contrast, could not state a cause of action, because, to extend a duty to defendant FMC would, “like the rippling of the waters, [go] far beyond the zone of danger of the explosion,” to everyone who suffered purely economic loss
 
 (Beck v FMC Corp.,
 
 53 AD2d, at 121,
 
 supra).
 

 Plaintiffs’ reliance on
 
 People Express Airlines v Consolidated Rail Corp.
 
 (100 NJ 246, 495 A2d 107) is misplaced. There, a
 
 *291
 
 fire started at defendant’s commercial freight yard located across the street from plaintiffs airport offices. A tank containing volatile chemicals located in the yard was punctured, emitting the chemicals and requiring closure of the terminal because of fear of an explosion. Allowing the plaintiff to seek damages for purely economic loss, the New Jersey court reasoned that the extent of liability and degree of foreseeability stand in direct proportion to one another: the more particular the foreseeability that economic loss would be suffered as a result of the defendant’s negligence, the more just that liability be imposed and recovery permitted. The New Jersey court acknowledged, however, that the presence of members of the public, or invitees at a particular plaintiffs business, or persons traveling nearby, while foreseeable, is nevertheless fortuitous, and the particular type of economic injury that they might suffer would be hopelessly unpredictable. Such plaintiffs, the court recognized, would present circumstances defying any appropriately circumscribed orbit of duty. We see a like danger in the urban disasters at issue here, and decline to follow
 
 People Express.
 

 Policy-driven line-drawing is to an extent arbitrary because, wherever the line is drawn, invariably it cuts off liability to persons who foreseeably might be plaintiffs. The
 
 Goldberg Weprin
 
 class, for example, would include all persons in the vicinity of Times Square whose businesses had to be closed and a subclass of area residents evacuated from their homes; the
 
 5th Ave. Chocolatiere
 
 class would include all business entities between 42nd and 57th Streets and Fifth and Park Avenues. While the Appellate Division attempted to draw a careful boundary at storefront merchant-neighbors who suffered lost income, that line excludes others similarly affected by the closures — such as the law firm, public relations firm, clothing manufacturer and other displaced plaintiffs in
 
 Goldberg Weprin,
 
 the thousands of professional, commercial and residential tenants situated in the towers surrounding the named plaintiffs, and suppliers and service providers unable to reach the densely populated New York City blocks at issue in each case.
 

 As is readily apparent, an indeterminate group in the affected areas thus may have provable financial losses directly traceable to the two construction-related collapses, with no satisfactory way geographically to distinguish among those who have suffered purely economic losses
 
 (see also, Matter of Kinsman Tr. Co.,
 
 388 F2d 821, 825 n 8). In such circumstances, limiting the scope of defendants’ duty to those who have, as a
 
 *292
 
 result of these events, suffered personal injury or property damage — as historically courts have done — affords a principled basis for reasonably apportioning liability.
 

 We therefore conclude that plaintiffs’ negligence claims based on economic loss alone fall beyond the scope of the duty owed them by defendants and should be dismissed.
 
 [2]
 

 Plaintiffs’ Public Nuisance Claims
 

 Plaintiffs contend that they stated valid causes of action for public nuisance, alleging that the collapses forced closure of their establishments, causing special damages beyond those suffered by the public.
 

 A public nuisance exists for conduct that amounts to a substantial interference with the exercise of a common right of the public, thereby offending public morals, interfering with the use by the public of a public place or endangering or injuring the property, health, safety or comfort of a considerable number of persons. A public nuisance is"a violation against the State and is subject to abatement or prosecution by the proper governmental authority
 
 (Copart Indus. v Consolidated Edison Co.,
 
 41 NY2d 564, 568).
 

 A public nuisance is actionable by a private person only if it is shown that the person suffered special injury beyond that suffered by the community at large
 
 (see, Burns Jackson Miller Summit & Spitzer v Lindner,
 
 59 NY2d 314, 334 [citing Restatement (Second) of Torts § 821C, comment 6]). This principle recognizes the necessity of guarding against the multiplicity of lawsuits that would follow if everyone were permitted to seek redress for a wrong common to the public (Restatement [Second] of Torts § 821C, comment a; Prosser,
 
 Private Action for Public Nuisance,
 
 52 Va L Rev 997, 1007 [1966]).
 

 A nuisance is the actual invasion of interests in land, and it may arise from varying types of conduct
 
 (Copart Indus. v Consolidated Edison Co.,
 
 41 NY2d, at 569,
 
 supra).
 
 In the cases before us, the right to use the public space around Madison Avenue and Times Square was invaded not only by the building collapses but also by the City’s decision, in the interest of public safety, to close off those areas. Unlawful obstruction of a
 
 *293
 
 public street is a public nuisance, and a person who as a consequence sustains a special loss may maintain an action for public nuisance
 
 (Callarian v Gilman,
 
 107 NY 360, 370). Indeed, “in a populous city, whatever unlawfully turns the tide of travel from the sidewalk directly in front of a retail store to the opposite side of the street is presumed to cause special damage to the proprietor of that store, because diversion of trade inevitably follows diversion of travel”
 
 (Flynn v Taylor,
 
 127 NY 596, 600).
 

 The question here is whether plaintiffs have suffered a special injury beyond that of the community so as to support their damages claims for public nuisance
 
 (see, Graceland Corp. v Consolidated Laundries Corp.,
 
 7 AD2d 89, 91,
 
 affd
 
 6 NY2d 900). We conclude that they have not.
 

 In
 
 Burns Jackson
 
 we refused to permit a public nuisance cause of action by two law firms seeking damages for increased expenses and lost profits resulting from the closure of the New York City transit system during a labor strike. We concluded that, because the strike was so widespread, every person, firm and corporation conducting a business or profession in the City suffered similar damage and thus the plaintiffs could not establish an injury different from that of the public at large.
 

 While not as widespread as the transit strike, the Madison Avenue and Times Square closures caused the same sort of injury to the communities that live and work in those extraordinarily populous areas. As the trial court in
 
 Goldberg Weprin & Ustin
 
 pointed out, though different in degree, the hot dog vendor and taxi driver suffered the same kind of injury as the plaintiff law firm. Each was impacted in the ability to conduct business, resulting in financial loss. When business interference and ensuing pecuniary damage is “so general and widespread as to affect a whole community, or a very wide area within it, the line is drawn” (Prosser,
 
 supra,
 
 at 1015). While the degree of harm to the named plaintiffs may have been greater than to the window washer, per diem employee or neighborhood resident unable to reach the premises, in kind the harm was the same.
 

 Leo v General Elec. Co.
 
 (145 AD2d 291) is inapposite. In
 
 Leo,
 
 the Appellate Division recognized a private right of action by plaintiff commercial fishermen who contended that defendant’s pollution of the Hudson River with toxic polychlorinated biphenyls (commonly known as PCBs), created a public nuisance that had a devastating effect on their ability to earn a living.
 
 *294
 
 Plaintiffs were able to establish that their injuries were special and different in kind, not merely in degree: a loss of livelihood was not suffered by every person who fished the Hudson. By contrast, every person who maintained a business, profession or residence in the heavily populated areas of Times Square and Madison Avenue was exposed to similar economic loss during the closure periods. Thus, in that the economic loss was “common to an entire community and the plaintiff [s] suffer [ed] it only in a greater degree than others, it is not a different kind of harm and the plaintifffs] cannot recover for the invasion of the public right” (Restatement [Second] of Torts § 821C, comment
 
 h).
 

 Accordingly, in
 
 532 Madison Ave. Gourmet Foods v Finlandia
 
 Ctr., the order of the Appellate Division should be reversed, with costs, the defendants’ motion to dismiss the complaint granted and the certified question answered in the negative. In
 
 5th Ave. Chocolatiere v 540 Acquisition
 
 Co., the order of the Appellate Division should be reversed, with costs, the defendants’ motion to dismiss the complaint granted in its entirety and the certified question answered in the negative. In
 
 Goldberg Weprin & Ustin v Tishman Constr.,
 
 the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs.
 

 Judges Smith, Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 In
 
 532 Madison Ave. Gourmet Foods v Finlandia Ctr.:
 
 Order reversed, etc.
 

 In
 
 5th Ave. Chocolatiere v 540 Acquisition Co.:
 
 Order reversed, etc.
 

 In
 
 Goldberg Weprin & Ustin v Tishman Constr. Corp.:
 
 Order, insofar as appealed from, affirmed, with costs.
 

 [1]
 

 . The “economic loss” rule espoused in
 
 Schiavone Constr. Co. v Mayo Corp.
 
 (56 NY2d 667,
 
 revg on dissent at
 
 81 AD2d 221) and relied on by defendants has no application here. That case stands for the proposition that an end-purchaser of a product is limited to contract remedies and may not seek damages in tort for economic loss against a manufacturer (see
 
 also, Bocre Leasing Corp. v General Motors Corp.,
 
 84 NY2d 685;
 
 Bellevue S. Assocs. v HRH Constr. Corp.,
 
 78 NY2d 282).
 

 [2]
 

 . Plaintiff Goldberg Weprin & Ustin’s bare allegation that the construction project was dangerously handled was insufficient to set forth a cause of action for strict liability based on an abnormally dangerous activity
 
 (see, Engel v Eureka Club,
 
 137 NY 100, 104-105;
 
 Doundoulakis v Town of Hempstead,
 
 42 NY2d 440, 448). Damage to property — one of the material elements — was not alleged
 
 (see, Spano v Perini Corp.,
 
 25 NY2d 11, 18).