[781 NYS2d 324]

WALL STREET GARAGE PARKING CORP., Respondent, v NEW YORK STOCK EXCHANGE, INC., Appellant.

First Department, August 5, 2004

APPEARANCES OF COUNSEL

*Milbank, Tweed, Hadley & McCloy, LLP*, New York City (*Douglas W. Henkin* and *Anthony J. Rotondi* of counsel), for appellant.

*Jenkens & Gilchrist Parker Chapin LLP*, New York City (*Stephen F. Harmon* and *Eric L. Unis* of counsel), for respondent.

## OPINION OF THE COURT

Tom, J.P.

At issue on this appeal is whether defendant New York Stock Exchange (NYSE) created a public nuisance by restricting vehicular access to a security zone around the Stock Exchange devised by closing seven traffic intersections in the aftermath of the terrorist attacks of September 11, 2001, thereby entitling plaintiff, a business entity in the area, to preliminary injunctive relief. We find the motion court erred in granting plaintiff a preliminary injunction because enjoining defendant Stock Exchange from inspecting vehicles entering the security zone surrounding NYSE premises changes, rather than preserves, the status quo and because plaintiff has not otherwise satisfied the prerequisites for obtaining preliminary injunctive relief.

Even prior to the events of 9/11, concern that the NYSE, the largest stock exchange in the United States, might be vulnerable to an explosive device hidden in a vehicle prompted the New York City Police Department (NYPD) to close New Street between Wall Street and Exchange Place and the intersection of Wall Street and Broadway to vehicular traffic in May 1996. A bomb hoax in September 1998 resulted in the closure of the sidewalks surrounding the premises occupied by the NYSE to all pedestrian traffic from 6:00 P.M. to 8:00 A.M. daily. In March 2001, the Stock Exchange began participating in the NYPD Paid Detail Program, in which off-duty police officers, in uniform and acting with full power and authority of regular on-duty police officers, provide security at the expense of a participating entity rather than the New York City taxpayers.

The center of the NYSE's economic activity is its trading floor, which extends across buildings located at 11 Wall Street and at 18, 20 and 30 Broad Street. After the terrorist attacks of September 11, 2001, the area was patrolled by members of the NYPD, including police officers participating in the Paid Detail

Program as well as those on regular duty, and including members of NYPD's heavily armed "Hercules Teams," by NYSE's own security personnel and by personnel provided by T&M Protection Resources, Inc. The Police Department blocked access to NYSE's premises from the seven intersections that surround the trading floor, placing barriers on Wall Street at Broadway and at William Street, on Exchange Place at Broadway and at William Street, on Nassau Street at Pine Street, on Broad Street at Beaver Street and on New Street at Beaver Street. The barriers were later replaced by trucks loaded with sand.

Plaintiff parking garage, which was formerly located within the security zone, claims that its business is being adversely impacted by security measures implemented by defendant NYSE in response to the events of September 11, 2001. Plaintiff garage is located on Exchange Place near the intersection with William Street. As an accommodation to plaintiff, the original security zone was modified and the truck barrier on Exchange Place at William Street was moved west towards Broad Street to permit vehicular access to and from the garage from William Street and Exchange Place. Garage patrons were then able to avoid entering the security zone, thus obviating the need for a search. However, on or about February 21, 2004, the William Street access point was once again blocked when the City began road construction on said street, and plaintiff's customers were again required to enter the security area to gain access to the garage.

The impact on plaintiff's business was substantial. Plaintiff asserts that from an average of 150 to 160 vehicles a day prior to 9/11, patronage dropped to 68 cars a day thereafter, further declining to 65 a day by February 2004. With the commencement of road construction, usage dropped to a mere 38 vehicles daily by the beginning of March, causing plaintiff to commence this action seeking damages as well as preliminary and permanent injunctive relief. Plaintiff sought to prohibit defendant NYSE "from obstructing, blocking or closing in any way ingress or egress to or from Exchange Place or the flow of vehicular traffic thereon, at or near where plaintiff conducts its business, and from stopping, arresting and searching vehicles exiting plaintiff's parking garage on Exchange Place between Broad Street and William Street."

Defendant NYSE took issue with the allegation that its security force had completely taken over the control of security

posts located at the blocked intersections. The affidavit of NYSE's Senior Vice-President of Security, James Esposito, states that "NYPD officers" are "directly involved in the security zone." Photographs of the area submitted by defendant depict NYPD officers stationed at pedestrian checkpoints with NYSE security personnel, as well as the deployment of the "Hercules Team and other NYPD personnel and vehicles within the security zone." Defendant opposed the application for preliminary relief on the ground that the garage is located outside the secured area and that the unrestricted access to plaintiff's premises available from William Street was subject only to temporary curtailment by street construction by the City at the intersection.

By order entered March 12, 2004, Supreme Court granted plaintiff's motion for a preliminary injunction, enjoining NYSE from blocking access to Exchange Place and from stopping and inspecting vehicles exiting the garage. Expressing doubt as to the authority of the City to delegate responsibility for security to a private entity, the court concluded that subjecting garage customers to search and blocking public streets constitute a public nuisance as well as a violation of Administrative Code of the City of New York § 19-107. In balancing the equities, the court reasoned that the nuisance represents a sufficient threat both to "plaintiff's civil rights as a private citizen" and to public order to warrant injunctive relief. (3 Misc 3d 1014, 1023 [2004].)

Several days after Supreme Court issued its order, defendant applied to this Court for a temporary stay of the injunction. Mr. Esposito's accompanying affidavit, dated March 15, states that, "as of this morning a lane had already been re-opened to vehicular traffic on William Street at Exchange Place to allow access to [plaintiff's] garage from outside the NYSE security zone (as was the case before the construction began at the intersection of William Street and Exchange Place)." This Court granted the application, lifting the injunction during the pendency of this appeal. We now reverse.

As an initial consideration, "[a] preliminary injunction is a provisional remedy. Its function is not to determine the ultimate rights of the parties, but to maintain the status quo until there can be a full hearing on the merits (*Gambar Enters. v Kelly Servs.*, 69 AD2d 297, 306)" (*Residential Bd. of Mgrs. of Columbia Condominium v Alden*, 178 AD2d 121, 122 [1991]). At the time plaintiff commenced this petition for a preliminary injunc-

tion, the status quo was represented by established security measures, including a series of vehicular and pedestrian checkpoints, that had already been in place for some 2¹/₂ years. Questions concerning supervision and control notwithstanding, the security measures are not alleged to have undergone any substantial change so as to warrant judicial restoration of established procedures. Rather, the precipitous decline in plaintiff's business is attributed to the total closure of the intersection of William Street and Exchange Place due to construction work by the City. With the completion of the road construction at the intersection, which plaintiff does not materially dispute, the status quo ante has been restored, rendering academic plaintiff's application for preliminary relief.

To be entitled to a preliminary injunction, the proponent is required to demonstrate a probability of ultimate success on the merits, irreparable injury in the event that injunctive relief is denied and a balancing of the equities in its favor (*Grant Co. v Srogi*, 52 NY2d 496, 517 [1981]; *see also Aetna Ins. Co. v Capasso*, 75 NY2d 860, 862 [1990]). However, because a public nuisance is inherently a condition for which the law provides a remedy, the proponent of the injunction is relieved from the general requirement to show that it lacks an adequate remedy at law (*see Graceland Corp. v Consolidated Laundries Corp.*, 7 AD2d 89, 93-94 [1958], *affd* 6 NY2d 900 [1959]).

It is unlikely, however, that plaintiff will be able to establish its right to recover on the ground that it sustained injury as the result of a public nuisance, the single theory advanced in the complaint. As stated in *532 Madison Ave. Gourmet Foods v Finlandia Ctr.* (96 NY2d 280, 292 [2001]):

> "A public nuisance exists for conduct that amounts to a substantial interference with the exercise of a common right of the public, thereby offending public morals, interfering with the use by the public of a public place or endangering or injuring the property, health, safety or comfort of a considerable number of persons. A public nuisance is a violation against the State and is subject to abatement or prosecution by the proper governmental authority (*Copart Indus. v Consolidated Edison Co.*, 41 NY2d 564, 568)."

Where, as here, a claim for recovery is predicated on a public nuisance, the claimant must show that it has "suffered a special injury beyond that of the community" (*532 Madison Ave.*, 96

NY2d at 293). As a general rule, "one who suffers damage or injury, beyond that of the general inconvenience to the public at large, may recover for such nuisance in damages or obtain injunction to prevent its continuance" (*Graceland Corp.*, 7 AD2d at 91).

Plaintiff's claimed economic injury is only partly attributable to the security procedures implemented in the area surrounding the NYSE. The further decline in its business commencing in February 2004 was precipitated by the City's road construction, a condition that has since abated. Furthermore, as Supreme Court noted in its order, "many businesses have suffered as a result of post-September 11, 2001 security measures." (3 Misc 3d at 1017.) The security zone surrounding the New York Stock Exchange covers several square blocks containing large buildings, many of which house businesses that can claim some measure of harm as a consequence of the security measures imposed. Plaintiff, which operates a business located outside the security zone, has not demonstrated a special injury beyond the disruption experienced by the community as a whole (*532 Madison Ave.*, 96 NY2d at 293). Any impediment to plaintiff's right to operate its garage will not support recovery of damages on a public nuisance theory where the same circumstances have impeded the similar rights of a large number of other businesses located in the area (*cf. Flynn v Taylor*, 127 NY 596, 600 [1891]; *Leo v General Elec. Co.*, 145 AD2d 291 [1989]).

On balance, the equities favor defendant NYSE. Plaintiff does not dispute the need for heightened security in the area. Defendant took steps to accommodate plaintiff by moving a checkpoint so as to place the access ramp to the garage outside the secured area. Plaintiff concedes that, as a result, many of its customers were unaffected by the security measures. The abatement of any public nuisance created by alleged improprieties in defendant's security procedures is a governmental prerogative, and the substantial police presence in the vicinity suggests that defendant's security operations are subject to some degree of official scrutiny.

Since plaintiff is unable to establish its right to recover on the ground that it has sustained special damages as the result of a public nuisance, its application for injunctive relief cannot stand because plaintiff is unable to persuasively argue that it has sustained irreparable injury. Its action against the NYSE is predicated on economic loss, compensable by monetary damages. Plaintiff has documented the decline in its patronage as

the result of the security measures undertaken by defendant and does not contend that it is impossible to calculate the extent of that loss. Thus, plaintiff cannot demonstrate that it lacks an adequate remedy at law so as to warrant injunctive relief (*see 1659 Ralph Ave. Laundromat Corp. v Ben David Enters., LLC*, 307 AD2d 288, 289 [2003]). Moreover, it is clear that plaintiff's loss of business was predominantly caused by the City's construction work, a temporary condition that no longer exists. Therefore, there is no need to enjoin any conduct by defendant NYSE to avoid speculative future damages consequent to a continuing harm (CPLR 6301, 6312 [a]).

Accordingly, the order of the Supreme Court, New York County (Walter B. Tolub, J.), entered March 12, 2004, which granted plaintiff's motion for preliminary relief and enjoined defendant from maintaining security blockades and conducting vehicle searches in the immediate vicinity of the New York Stock Exchange, should be reversed, on the law and the facts, without costs, and the motion denied.

Motion seeking leave to supplement record denied.

ANDRIAS, WILLIAMS, MARLOW and GONZALEZ, JJ., concur.

Order, Supreme Court, New York County, entered March 12, 2004, reversed, on the law and the facts, without costs, and plaintiff's motion for preliminary relief denied. Motion seeking leave to supplement record denied.