(February 27, 2001)

■ MAY JAMAL et al., Respondents, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION et al., Appellants. [721 NYS2d 337] —Order, Supreme Court, New York County (Ira Gammerman, J.), entered December 13, 1999, which granted plaintiff's motion to set aside a jury verdict rendered in favor of defendants, unanimously reversed, on the facts, without costs, the motion denied, and the verdict reinstated.

Plaintiff May Jamal commenced this action against defendants New York City Health and Hospitals Corporation, which owns and operates Bellevue Hospital, Milagros Santiago, M.D., and Irvin Fish, M.D., contending, essentially, that defendants were negligent in (1) discharging her from Bellevue without performing surgery to remove an unruptured cerebral aneurysm, (2) failing to schedule a date for the surgery, and (3) failing to respond to requests for follow-up information or follow-up care. But for defendants' negligence, according to plaintiff, she would not be suffering from a variety of physical and mental impairments, brought about by the rupturing of the aneurysm roughly a year after her discharge, as well as a stroke she suffered the day after she underwent surgery at Montefiore Hospital to clip the aneurysm. Plaintiff was 15 years old at the time of her discharge from Bellevue.

At the conclusion of the trial, the jury rejected all three of plaintiff's claims. Plaintiff thereafter moved pursuant to CPLR 4404 (a) to set aside the verdict and to have judgment entered in her favor as a matter of law, or, in the alternative, to have a new trial ordered on the ground that the verdict as to the second and third claims was against the weight of the evidence. The IAS Court granted the motion to set aside the verdict as against the weight of the evidence with respect to the second and third claims. We reverse the order and reinstate the verdict.

It is well settled that a jury verdict in favor of a defendant should not be set aside as against the weight of the evidence unless the preponderance of evidence in plaintiff's favor is so great that the jury could not have reached the verdict on any fair interpretation of the evidence (*Niewieroski v National Cleaning Contrs.*, 126 AD2d 424). The record in this case reveals that the evidence in plaintiff's favor was not great, and that the jury's finding was supported by a fair interpretation of the evidence.

The jury's finding that plaintiff was not discharged from Bellevue without plans for surgery is supported by her discharge summary, which states that she was discharged "on no medications with followup appointment in Neurosurgery Clinic." While the summary does not state conclusively that the appointment was in fact made, it was reasonable for the jury to find that it was, and that plaintiff failed to keep it. This is particularly true in light of significant evidence demonstrating that she was unwilling to undergo the surgery, a feeling with which her family concurred. Plaintiff and her family had been told that, at the time, a craniotomy (a necessary part of the surgical procedure) involved a serious risk of death or injury, and that many people could live their whole lives without suffering a rupture to the aneurysm. Consistent with a desire not to have the surgery is plaintiff's and her family's failure to reveal the existence of the aneurysm to two doctors from St. Joseph's Hospital who examined plaintiff about five months after her discharge, and about a month before her aneurysm ruptured. Plaintiff saw the first doctor because the high school she attended would not allow her to re-enroll without a physical examination. She saw the second doctor because she wanted permission to play softball. In addition, plaintiff failed to keep an appointment with a psychiatrist the next business day after her discharge as arranged by Bellevue. The jury was entitled to discredit the testimony of plaintiff and her family that defendants had not scheduled a follow-up appointment (*see, Herring v Hayes*, 135 AD2d 684, 685), and to find the contrary, a conclusion not against the weight of the evidence.

The jury was also entitled to discredit the testimony of Mertvat Etjamal, plaintiff's older sister, and Harriet Saladino, R.N., the school nurse at the high school, which formed the basis of the claim that defendants failed to respond to requests for follow-up information or follow-up care. Ms. Etjamal actively concealed plaintiff's known condition from the doctor she took plaintiff to see. She also made a number of inconsistent statements during her cross-examination. While Nurse Saladino

testified that she called Bellevue several times without being able to obtain any information, and that Ms. Etjamal made some of the phone calls to Bellevue from her office, none of these calls was reflected in the records she kept. More important, it was the jury's prerogative to credit the testimony of Dr. Fish that Bellevue nurses are told not to provide patient information over the phone to persons whom they do not know, that he never received notice of any calls from plaintiff's family, and that he returns all of his calls (*Herring v Hayes, supra*). The jury's determination was not against the weight of the evidence. Concur—Sullivan, P. J., Rosenberger, Tom, Ellerin and Friedman, JJ.