[741 NYS2d 223]

David Revill et al., Respondents, v Boston Post Road Development Corp. et al., Appellants.

First Department, May 2, 2002

APPEARANCES OF COUNSEL

*Steven Wildstein* for respondents.

*Michael Yoeli* of counsel (*Yoeli & Gottlieb LLP,* attorneys), for appellants.

OPINION OF THE COURT

Buckley, J.

The issue in this case is whether the trial court erred in set-

ting aside the verdict. We answer this question in the affirmative and reverse for the reasons set forth below.

## A.

This is an action for damages allegedly sustained when plaintiff David Revill fell on a buckled floor in a bedroom of his leased ground floor apartment owned and managed by defendants. The apartment had a master bedroom, a smaller bedroom for the two children, a living room, a dining area and a kitchen. On a Friday evening, a hot water heating pipe in the master bedroom broke, and water accumulated on the floor. The next morning, Saturday, the water was turned off. Revill noticed that the floor was wavy and uneven. The family slept in the living room that night. On Sunday morning, Revill went into the master bedroom and noticed a "big buckle, in the floor, a big bulge" about four inches high by eight inches wide and eight feet long. Plaintiffs showed the buckle to the superintendent.

On Monday, Revill went to work. On Monday evening, Mrs. Revill had a discussion with Steve Magistro, the agent for the building, advising him that Revill and the children repeatedly had tripped and fallen in the bedroom as a result of the buckled floor. Mrs. Revill demanded repair and declined Magistro's offer to move the family to another apartment in a different building owned and managed by defendants. Mrs. Revill testified that the other apartment cost $200 a month more, and she turned it down for that reason. Magistro testified that there was no difference in the rental price of the apartments. On Wednesday evening, five days after the flood, Revill went into the master bedroom to clean up and remove from the bedroom various components of his wooden bed. Revill and his two children were in the master bedroom. As Revill "went to pull up the box springs and take it out," simultaneously, the children began fighting in the room. Revill became distracted. At the same time, Revill took a step backward and tripped over the buckle in the floor, injuring his knee.

## B.

At the charge conference, after both sides rested, the court showed counsel the verdict sheet. The first question was: "Were the premises reasonably safe?" If the jury answered the first question "no," they were to go to the second question which asked: "Were the defendants negligent in not keeping the premises in a safe condition?" Plaintiffs' attorney objected that

"item one is duplicative of item two and I think it is overly preferential to the defendant because it gives the defense two shots at the same question * * *."

The court responded that the questions came directly from the Pattern Jury Instructions.

On summation, defendants' attorney argued that Revill knew about the buckle and should not have been in the bedroom moving out the mattress. He argued further that "the real question is were these premises reasonably safe, not absolutely, reasonably." Plaintiffs' attorney argued that because of the buckling on the floor of the bedroom, the apartment was not in reasonably safe condition.

After summations, the jury was charged that they should first consider whether the premises were in a reasonably safe condition, viz.:

> "In order to recover damages the Plaintiffs have the burden of proving three things. One, that the premises were not reasonably safe. * * * You must first consider whether the premises were in a reasonably safe condition. Plaintiffs claim that Plaintiff David Revill tripped and fell because of the raised buckled floor caused by the water from the burst bedroom radiator pipe. Defendants claim that Plaintiff, David Revill, did not fall in the manner he claims and that he had an opportunity to leave the apartment. You must decide whether a reasonably prudent person would have anticipated that the condition was not reasonably safe for persons using the apartment. If you decide that the buckled floor did not create an unsafe condition, you will find for the Defendants. If you decide that the buckled floor did create an unsafe condition, you must next consider whether the Defendants were negligent."

The jury subsequently found in favor of the defendants by answering in the affirmative the first question on the verdict sheet, "Were the premises reasonably safe?"

The trial court thereafter granted plaintiffs' motion to set aside the verdict as against the weight of the evidence and ordered a new trial based on its finding that "there is no valid line of reasoning or permissible inference which could lead rational people to the conclusion that the condition was reasonably safe."

## C.

The question before the jury was not whether the *condition* was reasonably safe, but was, in other words, whether the condition rendered the *premises* not reasonably safe. That this was the question the jury was to answer is evident not only from the question itself, which focused on the reasonable safety of the premises, but also from the charge, taken from the PJI, which also focused on whether the "premises were in a reasonably safe condition."

Twenty-six years ago, the Court of Appeals determined that the liability of an owner or possessor of land is measured by "the single standard of reasonable care under the circumstances" (*Basso v Miller*, 40 NY2d 233, 241; *see* 1A PJI3d 443, PJI 2:90 Introductory Statement [2001]).

In order to recover in this case, plaintiff had the burden of proving first that the premises were not reasonably safe (*Brewster v Prince Apts.*, 264 AD2d 611, 615-616, *lv denied* 94 NY2d 762, *lv dismissed* 94 NY2d 875). The pattern charge in PJI3d 2:91 is "a specific application of the general principles dealt with in PJI 2:90." (1A PJI3d 487.)

That the focus was on the reasonable safety of the premises, and not on the bulge alone, was also evident from the arguments of counsel on summation. Defendants' attorney argued to the jury that "the real question is were these premises reasonably safe, not absolutely, reasonably." Plaintiffs' attorney argued that because of the buckle in the bedroom, the *apartment* was not in a reasonably safe condition.

The evidence at trial showed the following facts: the apartment contained a master bedroom, a second bedroom, a living room, dining area and kitchen; the bulge was limited to the master bedroom; the bulge, which was four inches high and eight inches wide, was clearly visible, running eight feet on the bedroom floor; plaintiff and his family knew about the bulge; after the flood the entire family slept in the living room; and, the accident occurred when plaintiff returned to the bedroom, before it could be repaired, to remove items from the room.

Under these circumstances, a rational jury could easily have concluded that the *premises*—the apartment—were *reasonably* safe because the condition—the bulge—was open, obvious and isolated to one room of the large apartment; and because Revill, who knew about the bulge for five days and who had taken steps to avoid it by having the family sleep in the living room, could have continued to avoid it until repairs were made.

" 'A verdict should be set aside [as against the weight of the evidence] only where it seems palpably wrong and it can be plainly seen that the preponderance is so great that the jury could not have reached their conclusion upon any fair interpretation of the evidence' " (*Bernstein v Red Apple Supermarkets*, 227 AD2d 264, 265 [citation omitted], *lv dismissed* 89 NY2d 961; *see also, Jamal v New York City Health & Hosps. Corp.*, 280 AD2d 421,.422, citing *Niewieroski v National Cleaning Contrs.*, 126 AD2d 424, *lv denied* 70 NY2d 602). The trial court incorrectly applied the test for sufficiency of evidence (*Cohen v Hallmark Cards*, 45 NY2d 493, 498; *see also, Brewster v Prince Apts., supra* at 612), but even had it evaluated the verdict on the basis of the weight of the evidence, plaintiffs' motion to set aside the verdict should have been denied. While Mr. Revill's uncontroverted testimony and corroborating photographs established that there was a large buckle in the floor in the master bedroom, the jury was first asked to determine if the premises were reasonably safe, not if there was a defect on the floor in one bedroom. Plaintiffs argue that the trial court decision can be affirmed if we define premises as the master bedroom. Rather, the jury was entitled, as a matter of law, to consider all the facts and circumstances surrounding the existence of the buckled floor in reaching their determination of whether the premises remained reasonably safe despite the emergence of the defect. The jury's interpretation of the evidence resulted in its conclusion that the apartment remained reasonably safe because plaintiffs' own conduct caused Revill to fall.

Premises have been consistently defined in law as including an entire leasehold or building (Multiple Dwelling Law § 4 [22]; Penal Law § 140.00 [1]; *cf. Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 519, *and Metropolitan Prop. & Cas. Ins. Co. v Pulido*, 271 AD2d 57). More than a quarter century ago, property owner duties were reformulated to eliminate arcane distinctions between licensees and invitees and to adopt "the simple rule of reasonable care under the circumstances" (*Basso v Miller*, 40 NY2d 233, 240-241). Whether a duty exists is a judicial determination (*532 Madison Ave. Gourmet Foods v Finlandia Ctr.*, 96 NY2d 280, 288-289; *Muniz v Flohern, Inc.*, 77 NY2d 869, 870). Safety or dangerousness is for the trier of fact to resolve (*cf. Buckley v Sun & Surf Beach Club*, 95 NY2d 914, 915; *Kellman v 45 Tiemann Assoc.*, 87 NY2d 871, 872; *Burgos v Aqueduct Realty Corp.*, 92 NY2d 544, 551-552). Determinations which are fact-dependent, such as reasonable

safety, require a consideration of various factors as well as the striking of a common sense balance. The jury question in this case was whether the premises were in a reasonably safe condition; and resolution of that issue depends on " 'all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk' " (*Basso v Miller*, 40 NY2d 233, 241). The trial court, however, would not countenance such a conclusion by the jury since, in its view, the existence of a defect on the premises as a matter of law rendered the premises unsafe. The trial court thereupon assumed the jury function of determining whether the premises were in a reasonably safe condition. Eliminating the ability of the jury to consider all the circumstances, however, marks a dramatic and unprecedented expansion of owner liability. Were property owners liable upon proof of an unsafe defect, there would be no need for jurors to determine if premises are reasonably safe. Where, as in this case, facts have been established which transform a premises defect into an easily avoidable irritant, *Basso v Miller* teaches that the trier of fact has the final word on liability. The trial court determined that the premises were unreasonably dangerous as a result of the buckled floor. This substitution of judgment eliminated the jury function of considering and weighing the various factors which enter into a finding of safety or dangerousness.

On this record, (1) where the jury had evidence of alternative accommodations at no extra cost; (2) where the landlord had a mere three business days to correct this condition, which could be found to be less than a reasonable time; and (3) where plaintiffs had actual knowledge of the risks posed in the defective floor of the master bedroom and the overall safe condition of the entire apartment subsequent to the pipe break, the jury could have reached its conclusion fairly and its verdict, accordingly, was supported by the weight of the evidence.

Accordingly, the order of the Supreme Court, Bronx County (Lucindo Suarez, J.), entered September 22, 2000, which set aside the jury verdict in favor of defendants as against the weight of the evidence and which ordered a new trial, should be reversed, on the law, without costs, the verdict reinstated, and the matter remanded for further proceedings.

SAXE, J.P. (dissenting). The issue raised on appeal concerns the trial court's inclusion in its special verdict sheet of a question that, although correctly reflecting a portion of the language of the applicable Pattern Jury Instruction, actually served to

interfere with the proper resolution of the case by the jury. Accordingly, the order of the trial judge, setting aside the verdict in favor of defendants as against the weight of the evidence and ordering a new trial, was appropriate under the circumstances and should be affirmed.

Plaintiff David Revill, a truck loader at a Bloomingdale's facility in Long Island City, lived with his wife and two children in a two-bedroom apartment in the Bronx. On the evening of Friday, March 31, 1995, a radiator pipe located in their master bedroom burst, flooding their apartment with hot water. According to their trial testimony, the deluge continued for 15 hours. They explained that despite an immediate 911 call, which led to a visit by the local fire department, which in turn brought the situation to the attention of the building superintendent (who did not know how to turn off the water), the flooding continued until the following morning, when at approximately 11:00 A.M. a plumber arrived and turned off the water valve.

In contrast, the managing agent suggested that the superintendent was well aware of how to turn off the valve, and that the continued flow of water must have been from the water remaining in the building's pipes. However, he had no personal knowledge of the incident prior to a telephone call he received that Sunday, when an office employee notified him that there had been a flood and that she was contacting their usual plumber to make the necessary repairs.

The flow of water had seeped throughout the entire apartment, and in the days that followed, the family avoided use of the most affected areas, sleeping, for instance, in the apartment's living room. By that Sunday, plaintiff and his wife observed a buckle in the wood floor of their master bedroom in the shape of a triangular bulge rising three to four inches above floor level, about eight inches wide and eight feet long. They immediately informed the building superintendent, who said he would inform the management the next morning.

According to Monica Revill, plaintiff's wife, she complained on Monday morning to the managing agent that the buckle and similar conditions in the floors throughout the apartment should be fixed immediately, particularly because her young children were tripping over the floors as they ran around the apartment while playing. The agent informed her that the floor would be repaired; he also offered the family the use of another apartment, but at a rent $200 greater than their current rent. She rejected his offer because they could not afford the ad-

ditional rent. Her testimony on this point was contradicted by that of the managing agent, who said he offered the family a comparable apartment at the same rent.

Although the family continued to stay out of the water-damaged master bedroom, by Wednesday evening, April 5, 1995, plaintiff decided to finally remove some of the family's possessions from the master bedroom. He explained that an unusual number of items was present in the room at that time because just prior to the flooding incident, the management had painted the outer rooms, and in contemplation of the work, had directed plaintiff's family to move many items out of those rooms and into the bedrooms. In the course of plaintiff's retrieval of personal items and water-damaged property, his children entered the room, and, while he was removing the box spring, they became unruly. While reprimanding them, plaintiff became distracted, took a step, tripped over the buckle in the floor and fell, seriously injuring his knee.

At the close of the trial, the jury was provided with a special verdict sheet. Tracking the standard Pattern Jury Instruction regarding an owner and managing agent's liability for unsafe conditions on their premises (*see*, PJI3d 2:91), the verdict sheet, prior to the standard questions as to whether defendants were negligent and whether any such negligence was a proximate cause of plaintiff's accident, posed as the initial inquiry, "Were the premises reasonably safe?" Despite the objection interposed by counsel for plaintiff, the question was retained in the special verdict sheet, the trial court noting that it mirrored the language of the Pattern Jury Instruction.

The jury answered that question in the affirmative, and consequently returned a defense verdict without having gone on to consider the issues of negligence and proximate cause. Plaintiff then moved pursuant to CPLR 4404 (a) to set aside the verdict and order a new trial, reasoning that in view of the uncontroverted existence of the buckle, which concededly needed repair, the only possible conclusion was that the premises were not reasonably safe at the time of the accident.

To its credit, the trial court, although it had itself provided the jury with the question of whether the premises were reasonably safe, carefully reconsidered whether there was a sufficient evidentiary basis for the jury to answer that question in the affirmative. The court concluded that the jury's finding that the premises were reasonably safe was against the weight of the evidence, remarking that no valid line of reasoning or permissible inference would permit the finding that the condi-

tion was reasonably safe, and it therefore granted the motion. It is this determination that defendants challenge on appeal.

Initially, where the trial court itself has made a determination that a finding is against the weight of the evidence, that determination is entitled to be accorded great respect (*see, Nicastro v Park*, 113 AD2d 129, 137). The standard for making such a determination is that " 'the jury could not have reached the verdict on any fair interpretation of the evidence' " (*id.* at 134 [citations omitted]). Here, in view of the uncontested evidence regarding the nature of the defect, the trial court correctly concluded that no fair interpretation of the evidence could support the conclusion that an unsafe condition on the premises did not exist.

On appeal, defendants carefully make the distinction between a finding that the "condition" was not reasonably safe and a conclusion that the "premises" were not reasonably safe. They point out that PJI3d 2:91 requires a finding that the "premises" were not reasonably safe, while the court, in setting aside the verdict, merely concluded that the "condition" was unsafe. They therefore reason that despite the uncontroverted evidence of the substantial buckle in the bedroom floor, the jury could properly conclude that the premises as a whole were reasonably safe.

My colleagues accept defendants' reasoning that the existence of the buckled floor need not lead to the conclusion that the premises were unsafe, adopting the view that the Pattern Jury Instruction directs the jury to consider whether the "premises" were reasonably safe, rather than whether the "condition" was reasonably safe. They therefore reason that the jury was justified in considering the safety of the apartment as a whole, or in implicitly considering the master bedroom as "off limits" to the family since they were aware of the defect.

However, this interpretation of the jury instruction and the law it seeks to summarize simply does not comport with the law of premises liability. *If an undisputed defect unquestionably creates an unsafe condition, then by definition, the premises were not reasonably safe.*

It is true that the special verdict question used at trial here mirrors *part of* the language of the applicable Pattern Jury Instruction. It recites the second paragraph of PJI3d 2:91, which summarizes the plaintiff's burden of proof: "(1) that the *premises* were not reasonably safe; (2) that defendant was negligent in not keeping the premises in a reasonably safe

condition; and (3) that defendant's negligence in allowing the unsafe condition to exist was a substantial factor in causing plaintiff's injury." (PJI3d 2:91 [emphasis added].)

However, the instruction must be read as a whole. The paragraphs immediately following the above quoted second paragraph of the Pattern Jury Instruction elaborate and explain exactly how the jury is to decide each of the three elements. Most important here, the third full paragraph of PJI3d 2:91 serves to clarify how to determine the first element, namely, whether the premises were reasonably safe, in circumstances where an unsafe condition is alleged. The language of this third paragraph makes clear that premises cannot be reasonably safe where they contain a defect creating an unsafe condition.

Specifically, the third paragraph of the instruction, as applied to a claimed—and undisputed—defect, clearly directs that: "If you decide that [the defect] * * * did not create an unsafe condition, you will find for defendant and proceed no further * * *. *If you decide that * * * [the] presence [of the defect] created an unsafe condition, you must next consider whether defendant was negligent*" (PJI3d 2:91 [emphasis added]). The last sentence of the above-quoted language from the jury instruction establishes beyond any question that *if the claimed defect created an unsafe condition, the jury cannot properly go on to find that the premises were reasonably safe.* Therefore, when the Pattern Jury Instruction is read in its entirety, it is apparent that the jury cannot address the safety of the premises as a whole either by ignoring the known and existing defect, or by considering the defect in proportion to the remaining, safe portion of the premises.

The buckle in the floor necessarily created an unsafe condition. Given that circumstance, it was inappropriate to ask the jury to decide whether the premises were reasonably safe; in view of the established fact that the defect created an unsafe condition, pursuant to PJI3d 2:91, the jury's next task was to consider whether defendant was negligent. The mere use of the word "premises" in the instruction therefore may not properly be relied upon to permit a finding that the apartment as a whole was safe when it was conceded that an unsafe condition was present within it.

The alarmist drumbeat of the majority is unwarranted. In granting plaintiff's motion to set aside the verdict and order a new trial, the trial court was not eliminating the jury's ability to consider all the circumstances, as the majority asserts, nor

was it assuming the jury's function. Most certainly, its decision did not mark "a dramatic and unprecedented expansion of owner liability." Rather, the trial court observed that in posing the initial question of whether the premises were reasonably safe, it had made an error in presenting the law to the jury, since the conceded defect had unquestionably created an unsafe condition, *which precluded a finding that the premises were reasonably safe*. It was the responsibility of the court to correct this mistake, since it concerned only its presentation and instruction on the law.

The use of a special verdict sheet question employing the language from the second paragraph of PJI3d 2:91, without reference to the more specific explanation contained in the third paragraph, created in this instance a serious possibility of misunderstanding regarding the factual issue to be decided. Under the present circumstances, the initial verdict sheet question posed to the jury should have been whether the presence of a defect created an unsafe condition so as to render the premises not reasonably safe, rather than merely whether the premises were reasonably safe.

The Pattern Jury Instruction's use of different phrasing in two parts of the same instruction may well be of no relevance in most "unsafe condition" cases. For example, in instances where the defense contests the existence or the dangerousness of a claimed unsafe condition, the question of whether the premises are reasonably safe will not create any confusion; if the jury rejects the plaintiff's contention that there was any unsafe condition, it will properly conclude that the plaintiff failed to prove that the premises were not reasonably safe. Here, though, there was no dispute that a defect existed, or even that it was unsafe. Therefore, the verdict sheet actually misdirected the jury when it employed the language of the second paragraph of PJI3d 2:91. In this instance, the question of whether the premises were reasonably safe should not have been posed without making clear that, pursuant to the third paragraph of PJI3d 2:91, if the defect created an unsafe condition, the jury *must* go on to consider the question of whether defendant was negligent. The special verdict sheet, intended as a framework, or road map, to guide the jury through its deliberations, instead misled it.

While pattern instructions are carefully considered by a panel of scholarly experts, sometimes their application in circumstances other than those specifically contemplated requires minor adjustments. It is, unfortunately, virtually impossible

for us to recognize in advance all those situations where the adopted phrasing might lead to misunderstanding. But, when such a misunderstanding appears to have occurred, the appropriate thing for a trial judge to do is to recognize the problem and correct it. This, the trial judge carefully and responsibly did, and that decision should be affirmed. Unfortunately, the majority's writing penalizes the quality of critical self-examination that should be most prized in a judge.

Once it is acknowledged that plaintiff's burden in this particular instance was to demonstrate that the presence of the defect created an unsafe condition on the premises, rather than that the premises as a whole were reasonably safe, the defense verdict is unsupportable. Defendants never took the position that the buckle in the floor was anything but unsafe. Rather, defendants' position was that since plaintiff was well aware of the problem, he was perfectly able to avoid it, and therefore his and his family's safety was not compromised. Along the same lines, my colleagues further suggest that defendants' offer of alternative housing could properly be used to support the determination that no unsafe condition existed on the premises.

That the defect was open and obvious, and that plaintiff was aware of it, does not eliminate the danger created by the defect's presence, nor does it eliminate the property owner's duty to maintain the premises in reasonably safe condition (*see, Basso v Miller*, 40 NY2d 233, 241; *Michalski v Home Depot, Inc.*, 225 F3d 113, 117; *Morgan v Genrich*, 239 AD2d 919, 920; *Holl v Holl*, 270 AD2d 864). To conclude that the open and obvious nature of the defective condition precludes any liability on the part of the landowner would be "inconsistent with the essence of the New York rule of premises liability that requires reasonable care in view of all the circumstances" (*Michalski, supra* at 120, citing *Basso v Miller, supra* at 241). The majority suggests that plaintiff's decision to enter the room to remove possessions, and his failure to completely prevent his children from entering the room, somehow permit a finding that the condition was not unsafe. However, these factors, while they might have formed the basis for a finding that plaintiff was negligent in causing or contributing to the accident, cannot serve as grounds upon which the jury could conclude that there was no unsafe condition (*see, Michalski, supra*).

Similarly, plaintiff's rejection of defendants' offer of a substitute apartment did not alter the fact that an unsafe

condition existed on the premises. That offer, along with the disputed point of whether the offer involved a rent increase, would instead have been relevant in determining the issue of negligence, namely, whether defendants breached their legal duty toward their tenants to maintain the leased premises in a reasonably safe condition. However, the presence of the inappropriately-posed initial question on the verdict sheet prevented the jury from arriving at that issue.

The undisputed evidence as to the condition of the bedroom floor leads inexorably to the conclusion that an unsafe condition existed on the premises, leaving for the jury only fact issues as to each party's negligence and proximate causation of the injury. The new trial directed by the trial court is therefore necessary, so that plaintiff can receive due consideration by a jury of these issues before his claim is finally determined.

FRIEDMAN and MARLOW, JJ., concur with BUCKLEY, J.; SAXE, J.P., and RUBIN, J., dissent in a separate opinion by SAXE, J.P.

Order, Supreme Court, Bronx County, entered September 22, 2000, reversed, on the law, without costs, the verdict in favor of defendants reinstated, and the matter remanded for further proceedings.