06-5694-cv
Sahu v. Union Carbide Corporation

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: May 28, 2008                  Decided: November 3, 2008)

Docket No. 06-5694-cv

---------------------------------------

JANKI BAI SAHU, SHANTI BAI, MUNEE BI, QAMAR SULTAN, FIRDAUS BI, NUSRAT JAHAN, PAPPU SINGH, JAMEELA BI, MEENU RAWAT, BANO BI, MAKSOOD AHMED, BABU LAL, and KAVAL RAM,

Plaintiffs-Appellants,

- v. -

UNION CARBIDE CORPORATION, WARREN ANDERSON,

Defendants-Appellees.

---------------------------------------

Before:   KEARSE, CALABRESI, and SACK, Circuit Judges.

Appeal from a judgment of the United States District Court for the Southern District of New York (John F. Keenan, Judge) granting summary judgment in favor of defendants Union Carbide Corporation and Warren Anderson on all the claims of the plaintiffs related to water pollution allegedly caused by the operations at a factory owned and operated by a former Union Carbide subsidiary in Bhopal, India. With respect to the plaintiffs' claims for injunctive relief and their theories of liability other than their attempt to pierce the corporate veil between Union Carbide and its subsidiary, the district court, sua

sponte, converted the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) to one for summary judgment under Federal Rule of Civil Procedure 56 and granted the motion. We conclude that the district court did not give the plaintiffs sufficient notice to allow them adequately to respond to the converted summary judgment motion.

Vacated and Remanded.

RICHARD S. LEWIS, Cohen Milstein Hausfeld & Toll, PLLC (Matthew K. Handley, Reena Gambhir, of counsel), Washington, DC, for Plaintiffs-Appellants;

Curtis V. Trinko, New York, NY, for Plaintiffs-Appellants;

H. Rajan Sharma, Edison, NJ, for Plaintiffs-Appellants;

Richard Herz, Marco Simons, EarthRights International, Washington, DC, for Plaintiffs-Appellants;

Esther Berezofsky, Gerald Williams, Williams Cuker Berezofsky, Cherry Hill, NJ, for Plaintiffs-Appellants;

Neal A. DeYoung, Koskoff Koskoff & Bieder, PC, Bridgeport, CT, for Amici Curiae Members of Congress, in support of Plaintiffs-Appellants;

WILLIAM A. KROHLEY, Kelley Drye & Warren LLP (William C. Heck, of counsel), New York, NY, for Defendants-Appellees.

SACK, Circuit Judge:

This appeal requires us to consider, at the threshold, whether we may exercise appellate jurisdiction over both of the district court's orders disposing of the plaintiffs' claims under

2

the circumstances presented even though the plaintiffs' notice of appeal specifies only one order that appears to resolve only one claim. We also consider the circumstances under which a district court may, sua sponte, convert a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) into a motion for summary judgment under Federal Rule of Civil Procedure 56.

We conclude that we have jurisdiction to review all the appellants' claims and that the district court erred in the manner in which it converted the defendants' motion to dismiss into a motion for summary judgment. We therefore vacate the judgment of the district court and remand for further proceedings.

**BACKGROUND**

On November 8, 2004, the plaintiffs-appellants, who are residents or property owners in Bhopal, India, filed a complaint in the United States District Court for the Southern District of New York (John F. Keenan, Judge) seeking injunctive and monetary relief under New York law for injuries allegedly suffered as a result of water pollution. This pollution, they allege, was caused by the operation of a pesticide plant owned and operated by Union Carbide India Limited ("UCIL"). UCIL was at the time, but is no longer, a subsidiary of defendant-appellee Union Carbide Corporation ("Union Carbide"). The defendant-appellee Warren Anderson was then Chief Executive Officer of Union Carbide. UCIL is not a defendant.

3

                    Prior Litigation

          The plaintiffs here were members of a putative class that had previously sought to pursue a different lawsuit involving the operation of the same Bhopal plant from which the toxic chemical pollutants at issue here allegedly emanated. That class asserted a variety of claims arising under, inter alia, the Alien Tort Claims Act, 28 U.S.C. § 1350. Bano v. Union Carbide Corp., No. 99 Civ. 11329(JFK), 2000 WL 1225789, at *5, 2000 U.S. Dist. LEXIS 12326, at *14-15 (S.D.N.Y. Aug. 28, 2000). The Bano plaintiffs' allegations centered around a disastrous leak of toxic gas at the plant in 1984. Bano, 2000 WL 1225789, at *1, 2000 U.S. Dist LEXIS 12326, at *1-2. The district court dismissed their claims because, it concluded, the plaintiffs lacked standing to bring suit under India's Bhopal Gas Leak (Processing of Claims) Act, and their claims were barred by a settlement agreement between the government of India and Union Carbide. Id. at *14, 2000 U.S. Dist LEXIS 12326, at *42-*43. On appeal, we affirmed this part of the district court's decision, but remanded for further consideration of the plaintiffs' common-law tort claims. Bano v. Union Carbide Corp., 273 F.3d 120, 132-33 (2d Cir. 2001).

          On remand, the remaining claims were pursued by one Haseena Bi, individually, and three organizations seeking to represent the interests of other persons allegedly injured in the disaster. See Bano v. Union Carbide Corp., No. 99 Civ. 11329(JFK), 2003 WL 1344884, at *2, 2003 U.S. Dist LEXIS 4097, at

4

*6-7 (S.D.N.Y. Mar. 18, 2003). The defendants moved to dismiss those claims. See id. at *3, 2003 U.S. Dist LEXIS 4097, at *8. The district court granted the defendants' motion, concluding that 1) the plaintiffs' personal-injury claims were time-barred; 2) their property-damage claims were also time-barred; 3) the plaintiff organizations lacked standing to pursue their damages claims; 4) injunctive relief requiring remediation of contaminated soil and groundwater was impracticable; and 5) injunctive relief requesting medical monitoring would be inequitable. See id. at *5-*6, *8-*9, 2003 U.S. Dist LEXIS 4097, at *15-*18, *22-*24, *25-*27.

Bi and the organizations appealed. "[W]e affirm[ed] the judgment of the district court except to the extent that it dismissed [the individual plaintiff] Bi's claims for monetary and injunctive relief for alleged injury to her property. As to those claims, we vacate[d] the judgment and remand[ed] for further proceedings, including consideration of whether those claims may be pursued in a class action." Bano v. Union Carbide Corp., 361 F.3d 696, 702 (2d Cir. 2004).

On remand, the plaintiffs sought class certification. But the court interpreted their claims to seek the kind of on-site remediation that had previously been rejected. It therefore concluded that it could not "allow [additional class representatives] to intervene in or to certify a class for a claim that [had already been] dismissed." Bano v. Union Carbide Corp., No. 99 Civ. 11329(JFK), 2005 WL 2464589, at *4, 2005 U.S.

5

Dist. LEXIS 22871, at *11 (S.D.N.Y. Oct. 5, 2005). It further decided that "[e]ven if [that] claim remained in the case, the putative class would not be certified because it fails Rule 23's requirements." Id. "Finally," the court concluded, inasmuch as the individual plaintiff, Bi, "owns no property, [the plaintiffs] can bring no viable claim." Id.

We affirmed by summary order. Bano v. Union Carbide Corp., 198 F. App'x 32 (2d Cir. 2006).

District Court Proceedings

This lawsuit was filed by "plaintiffs whose personal injury claims [unlike those in Bano] are not time-barred as they were discovered within the three-year statute of limitations period." Sahu v. Union Carbide Corp., 418 F. Supp. 2d 407, 409 n.3 (S.D.N.Y. 2005) ("Sahu I"). The plaintiffs also allege that they "own or have a beneficial interest in property and/or water wells in the affected communities." Compl. 1-2.

According to their complaint, the plaintiffs have suffered a variety of ailments caused by "the highly carcinogenic chemicals and toxic pollutants in the drinking water supply emanating from the premises of the former UCIL plant." See, e.g., id. ¶ 41. Although the defendants did not directly own or operate the factory, the plaintiffs contend that the defendants may nonetheless be held liable for the plaintiffs' injuries under any of four theories of relief: 1) that "Union Carbide was a direct participant and joint tortfeasor in the activities and decisions that resulted in the environmental pollution at issue";

6

2) that "Union Carbide conspired with and/or worked in concert with UCIL to cause, exacerbate and/or conceal the pollution problem in Bhopal"; 3) that Union Carbide "exercised sufficient actual control over UCIL, its Indian affiliate, that the latter was merely the general or specific agent . . . of the former"; or 4) that UCIL acted as Union Carbide's alter-ego, justifying the piercing of the corporate veil between Union Carbide and UCIL. Id. ¶ 60.

As factual support for these claims, the plaintiffs allege that Union Carbide "made the decision to 'backwards-integrate' UCIL from a mere formulation facility for pesticides into a manufacturing plant." Id. ¶ 73. They assert that it did so because the law of India prohibited foreign ownership of more than forty percent of local industries unless the foreign owners helped transfer technology to the local subsidiary. Id. ¶¶ 71-72. In implementing this plan, Union Carbide transferred "improper, inadequate and unproven technology . . . to UCIL for a manufacturing process involving highly toxic and volatile chemical agents." Id. ¶ 78.

The plaintiffs also contend that Union Carbide was aware of the danger of water pollution and other environmental damage yet failed to take adequate precautions to prevent it. Prior to the Bhopal plant's catastrophic gas leak in 1984, they say, "Union Carbide did not take any mitigating steps, measures or actions to control, limit or otherwise remediate the problems that would eventually lead, as the Company's own engineers had

7

advised, to a massive environmental pollution problem with the subsurface water supply." Id. ¶ 93. Moreover, to the extent these acts or omissions are attributed to UCIL, Union Carbide "ratified, approved and/or acquiesced in that failure to act subsequently." Id.

Finally, the plaintiffs fault Union Carbide's response to the 1984 disaster. They contend that the cleanup effort undertaken by the company was only "a site-based project, undertaken at minimal expense, which would conceal both the seriousness of on-site pollution and the potential risks of off-site contamination, while enabling Union Carbide to recover money from the sale of its remaining assets at UCIL." Id. ¶ 95.

In support of their allegations in the complaint, the plaintiffs refer to, paraphrase, and quote from -- but do not include or append -- documents obtained in the course of the Bano litigation and otherwise. See, e.g., id. ¶ 64 (referring to Union Carbide corporate charter and policy manual); id. ¶ 68 (referring to Union Carbide internal manuals); id. ¶ 76 (referring to 1973 Capital Budget Proposal); id. ¶ 85 (referring to Union Carbide Engineering Department document, dated July 21, 1972); id. ¶ 91 (referring to environmental survey conducted by Arthur D. Little, Inc. and India's National Environmental Engineering Research Institute); id. ¶ 109 (referring to report entitled "Presence of Toxic Ingredients in Soil/Water Samples Inside Plant Premises"); id. ¶ 111 (referring to Union Carbide "Business Confidential" document entitled "Response to

8

Allegations of Environmental Contamination Around the Bhopal Plant Site," dated May 22, 1990).

By motion dated May 18, 2005, the defendants applied to the district court

> for an order pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure, dismissing the complaint and granting summary judgment, on the grounds: (1) that the documentary evidence referred to or which is integral to the complaint, and thus is part of the complaint, flatly contradicts the conclusory allegations in the complaint that [Union Carbide can be held liable as a joint tortfeasor, or because it conspired or acted in concert with UCIL,] and that all claims against defendants based on those alleged grounds should accordingly be dismissed; (2) that there is no equitable basis for plaintiffs to seek to pierce the veil of UCIL, now Eveready Industries India Ltd., which operated the Bhopal plant which is the subject of this action, and which is an existing and viable corporation in India, to impose liability on Union Carbide as a former shareholder of UCIL; and (3) that the plaintiffs' claims for injunctive relief and medical monitoring are infeasible and otherwise inappropriate.

Notice of Motion, Sahu v. Union Carbide Corp., No. 04-CV-08825(JFK) (S.D.N.Y. dated May 18, 2005; filed Aug. 5, 2005). The defendants included with their motion an affidavit of H. Rajan Sharma, a New Jersey-based lawyer who is among counsel for the plaintiffs in this case. The affidavit had been submitted in the earlier Bano litigation. It included ninety-seven exhibits comprising thousands of pages of documentary evidence. See Affidavit of H. Rajan Sharma in Opposition to Defendants' Motion for Dismissal and/or for Summary Judgment, Bano v. Union Carbide Corp., No. 99 Civ. 11329(JFK) (S.D.N.Y. Sept. 20, 2002) ("Sharma

9

Affidavit"). All the documents referred to in the complaint were attached to the Sharma Affidavit as exhibits. See id.

The plaintiffs, in opposition to the defendants' motion, argued that it sought summary judgment only as to the plaintiffs' attempt to pierce the corporate veil between Union Carbide and UCIL, whereas the defendants' motion as to the non-veil-piercing claims could be decided on the pleadings alone. They argued that only the veil-piercing claim was related to facts alleged by the defendants beyond the scope of the plaintiffs' pleadings. See Memorandum of Law in Opposition to Motion To Dismiss and/or for Summary Judgment 2, Sahu v. Union Carbide Corp., No. 04 Civ. 8825(JFK) (S.D.N.Y. dated July 6, 2005; filed Aug. 9, 2005) ("Memorandum in Opposition"); see also Statement of Defendants Pursuant to Rule 56.1 of the Civil Rules of This Court, Sahu v. Union Carbide Corp., No. 04 Civ. 8825(JFK) (S.D.N.Y. dated May 17, 2005; filed Aug. 5, 2005); Sahu v. Union Carbide Corp., 475 F.3d 465, 468 (2d Cir. 2007) (per curiam) ("Sahu II") ("In August 2005, defendants moved for summary judgment on the corporate veil-piercing claim and to dismiss the rest of the claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure."). They notified the court, if only by footnote, that "if the Court should decide to convert Points I, II and IV [arguments based on claims other than veil-piercing] to motions for summary judgment, Plaintiffs respectfully reserve their right to submit a motion under Rule 56(f) for additional

10

discovery needed to effectively oppose Points I, II and IV on the merits." Memorandum in Opposition 3 n.3.

Without entertaining further motions by the parties, the district court issued an order dated December 1, 2005, dismissing all the claims of the plaintiffs except the veil-piercing claim. See Sahu I, 418 F. Supp. 2d at 416. Before addressing the merits of these claims, the court noted that "both parties [had] submitted [to the court] matters outside the pleadings, which the Court considered, triggering mandatory conversion to summary judgment." Id. at 411. Although the court acknowledged that the plaintiffs, being the non-moving parties, required notice of this conversion, it concluded that the defendants' "submission of exhibits, affidavits, and the like g[ave] the non-moving party notice of possible conversion." Id. at 410. Therefore, "[to] the extent any part of Defendants' motion [was] a Rule 12(b)(6) motion to dismiss, it [was] converted to a Rule 56 motion for summary judgment." Id. at 411. Based on the documents to which the court referred, it granted the defendants' converted motion for summary judgment as to all the claims of the plaintiffs except the veil-piercing claim. Id. at 412-15. It then granted a stay of that order to permit the plaintiffs to engage in additional discovery as to the veil-piercing claim. Id. at 415-16.

On December 22, 2005, the plaintiffs filed a notice of appeal. We heard argument on November 15, 2006. The district court had not at that time yet decided the remaining veil-

11

piercing claim. On January 17, 2007, we dismissed the appeal because "the plaintiffs ha[d] failed to show that the denial of the permanent injunctive relief . . . needs immediate review to be effectively challenged" and because we heard the appeal before final judgment had been entered by the district court. Sahu II, 475 F.3d at 468.

On November 21, 2006, however, after we had heard oral argument but before we filed our Sahu II decision, the district court issued an opinion and order dated November 20, 2006, dismissing the veil-piercing claim and denying the plaintiffs' request for additional time for discovery. Sahu v. Union Carbide Corp., No. 04 Civ. 8825(JFK), 2006 WL 3377577, 2006 U.S. Dist. LEXIS 84475 (S.D.N.Y. Nov. 20, 2006) ("Sahu III"). The court concluded:

> For the reasons set forth above, defendants'
> motion for summary judgment dismissing
> plaintiffs' claims is granted. This case is
> closed, and the Court directs the Clerk to
> remove the case from the Court's docket.

Id. at *11, 2006 U.S. Dist. LEXIS 84475, at *32.

On the day following the entry of that order, November 22, 2006, the clerk of the district court entered the final judgment from which appeal is sought:

> ORDERED, ADJUDGED AND DECREED: That for the
> reasons stated in the Court's Opinion and
> Order dated November 20, 2006, defendants'
> motion for summary judgment dismissing
> plaintiffs' claims is granted; accordingly
> the case is closed.

12

Judgment, Sahu v. Union Carbide Corp., No. 04 Civ. 8825(JFK) (S.D.N.Y. Nov. 22, 2006). The district court's decisions as to all the claims of the plaintiffs were thus then ripe for appeal.

Also prior to the filing of our 2007 decision in Sahu II, on December 15, 2006, the plaintiffs filed a notice of appeal in the district court stating their intention to seek review of "the Opinion and Order of U.S. District Judge John F. Keenan of the Southern District of New York entered in this action on the 21st day of November, 2006." Notice of Appeal, Sahu v. Union Carbide Corp., No. 04 Civ. 8825(JFK) (S.D.N.Y. Dec. 15, 2006). The plaintiffs did not refer specifically to the document that purported to be the final judgment.

The notice was then filed in this Court, as was a corresponding "Civil Appeal Pre-Argument Statement (Form C)." These documents both stated that the plaintiffs appealed from the November 21, 2006, order of the district court dismissing the veil-piercing claim and denying the plaintiffs' request for additional time for discovery rather than the order awarding final judgment filed November 22, 2006. In the Form C, but not the notice of appeal, the plaintiffs also referred to the appeal from the December 1, 2001, district court order granting summary judgment on the non-veil-piercing claims, and noted that that appeal -- which would result in our decision in Sahu II a month or two later -- was then pending in this Court. See Appellants' Post-Argument Letter Brief dated June 11, 2008, Ex. 2.

13

**DISCUSSION**

I.  Appellate Jurisdiction

We must first determine which of the plaintiffs' claims we have jurisdiction to consider.  The issue arises because, as noted, the November 21, 2006, order of the district court addressed only the veil-piercing claim.  According to the notice of appeal filed on December 15, 2006, instituting the present appeal, it is this November 21, 2006, order from which this appeal has been taken.  The plaintiffs' non-veil-piercing claims had earlier been dismissed pursuant to the district court's order filed December 1, 2005.  And that order had already, separately, been appealed to us by notice of appeal filed December 22, 2005, ultimately resulting in our decision in Sahu II, and the subsequent mandate that ended that appeal.  As of December 15, 2006, the date the notice of appeal in this case, specifically referring to the district court's order regarding the veil-piercing claims, was filed, the other appeal concerning the district court's order dismissing the other claims had been argued and was sub judice in this Court.  The question is whether the December 15, 2006, notice of appeal effects an appeal not only from the November 21, 2006, district court order (regarding the veil-piercing claim) to which the notice explicitly refers, but also from the December 1, 2005, district court order (regarding the non-veil-piercing claims), which the notice does not explicitly mention, and which we held unripe for review on January 17, 2007, in Sahu II.

14

A notice of appeal must "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). But we "construe notices of appeal liberally, taking the parties' intentions into account." Shrader v. CSX Transp., Inc., 70 F.3d 255, 256 (2d Cir. 1995). We have also observed, however, that our appellate jurisdiction "depends on whether the intent to appeal from [a] decision is clear on the face of, or can be inferred from, the notices of appeal." New Phone Co. v. City of New York, 498 F.3d 127, 131 (2d Cir. 2007).

In the unusual circumstances presented here, we think the plaintiffs' intent to appeal from both orders can be inferred from the notice of appeal. When the district court filed the November 21, 2006, order, the plaintiffs found themselves in a peculiar situation. They had already filed a notice of appeal with respect to the December 1, 2005, district-court order dismissing the non-veil-piercing claims. That appeal was before us and had already been argued.

As the last date by which a timely appeal from the November 21 order had to be filed drew near, the plaintiffs could not know either what the outcome of the then-pending appeal would be or when we would decide it. They identified in their new notice of appeal the order dismissing the veil-piercing claims -- the only claims not yet subject to an appeal -- rather than the final judgment dismissing all the claims. In their "Form C" Pre-Argument Statement, filed in this Court simultaneously with the notice of appeal, they did refer specifically to the appeal of

15

the non-veil-piercing claims which was then pending.  Together, the documents were "functional[ly] equivalent" to a notice of appeal from the final judgment filed one day later.  See Torres v. Oakland Scavenger Co., 487 U.S. 312, 316-17 (1988) (commenting that "if a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires," but holding that a notice of appeal that did not name a party as an appellant was not the functional equivalent of a notice of appeal filed by that party).

We conclude that the dismissals of all of the claims of the plaintiffs are now before us.

### II.  Conversion of Motion To Dismiss to Motion for Summary Judgment

The district court's December 1, 2005, order dismissed all the claims of the plaintiffs other than the one seeking to pierce the corporate veil between Union Carbide and UCIL.  The court did so after converting the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) into a Rule 56 motion for summary judgment.  See Sahu I, 418 F. Supp. 2d at 411 ("To the extent any part of Defendants' motion is a Rule 12(b)(6) motion to dismiss, it is converted to a Rule 56 motion for summary judgment.").[1]  Although we find it a close question, we

---

[1]  The district court's statement as to this issue reads:

A Court "shall" convert a motion to dismiss into one for summary judgment when "matters outside the pleadings are presented to and

16

agree with the plaintiffs that the district court provided inadequate notice of conversion prior to granting the motion and that its action was therefore in error -- or at least premature.

When a district court converts a motion to dismiss into one for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Ordinarily,

not excluded by the court," Fed. R. Civ. P. 12(c), and where the non-movant "should reasonably have recognized the possibility that such a conversion would occur." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (internal quotations omitted). Notice of conversion can be inferred from the circumstances. Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 592 (2d Cir. 1993). The moving party's submission of exhibits, affidavits, and the like gives the non-moving party notice of possible conversion. National Association of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratories, Division of/and American Home Products Corp., 850 F.2d 904, 911 (2d Cir. 1988); In re G. & A. Books, Inc., 770 F.2d 288, 295 (2d Cir. 1985); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (3d ed. 1998); see also Morelli v. Cedel, 141 F.3d 39, 45 (2d Cir. 1998).

In connection with Defendant's motion, both parties submitted matters outside the pleadings, which the Court considered, triggering mandatory conversion to summary judgment. Plaintiffs are on notice of a possible conversion as evidenced by the submission of extrinsic materials, and the fact that Plaintiffs' opposition to Defendants' motion is titled: "Memorandum of Law in Opposition to Motion to Dismiss and/or for Summary Judgment . . . ."

Sahu I, 418 F. Supp. 2d at 410-11.

17

this means that a district court "must give notice to the parties before converting a motion to dismiss pursuant to Rule 12(b)(6) into one for summary judgment and considering matters outside the pleading." Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999) (citing Kopec v. Coughlin, 922 F.2d 152, 154-55 (2d Cir. 1991)) (emphasis supplied). Underlying the notice requirement is "the principle that parties are entitled to a reasonable opportunity to present material pertinent to a summary judgment motion." Id.

> Compliance with these requirements . . . . is not an end in itself. The district court's conversion of a Rule 12(b)(6) motion into one for summary judgment is governed by principles of substance rather than form. The essential inquiry is whether the appellant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings. Resolution of this issue will necessarily depend largely on the facts and circumstances of each case.

In re G. & A. Books, Inc., 770 F.2d 288, 295 (2d Cir. 1985), cert. denied, 475 U.S. 1015 (1986).

The district court did not explicitly notify the parties before converting the Rule 12(b)(6) motion into a motion for summary judgment. That was unnecessary, in the court's view, because the plaintiffs were "on notice of a possible conversion": "[B]oth parties submitted matters outside the pleadings" and the plaintiffs entitled their opposition to the defendants' motion to dismiss "Memorandum of Law in Opposition to Motion to Dismiss and/or for Summary Judgment . . . ." Sahu I, 418 F. Supp. 2d at 411. In light of the particular complexities of this litigation,

18

we disagree with the district court's conclusion that the plaintiffs received sufficient notice.

We have held that "[a] party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss." G. & A. Books, 770 F.2d at 295. "Even where only the party moving to dismiss has submitted extrinsic material such as depositions or affidavits, the opposing party may be deemed to have had adequate notice that the motion to dismiss would be converted." Id.

But the only arguably extrinsic submissions by the plaintiffs were references in their complaint to, or quotations from, documents that appear to have been, in large part, in the record of the earlier Bano litigation. Such limited references are insufficient to incorporate documents or exhibits into the complaint. See Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (concluding that "[l]imited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint" and that plaintiff's "paraphrasing of certain events occurring during parts of the disciplinary hearing and his single quotation of one excerpt" is insufficient to incorporate the hearing transcripts into the complaint).

To be sure, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it

19

where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (citation and internal quotation marks omitted) (concluding that referenced contracts were "integral" to complaint that put at issue whether those contracts authorized sale of certain artistic performances).

But the contents of the documents referred to or quoted in the complaint here do not appear to have been necessary to the "short and plain statement of the claim showing that [the plaintiffs were] entitled to relief," Fed. R. Civ. P. 8(a)(2), see also, e.g., Boykin v. Keycorp, 521 F.3d 202, 213 (2d Cir. 2008), required in a complaint. They seem to have been used by the plaintiffs largely for the purpose of indicating that evidence existed to support the complaint's assertions. In light of subsequent Supreme Court authority, we think this material is best viewed as tending to establish that the complaint's factual assertions are "plausible," see Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1966-67 (2007), and therefore sufficient to survive a motion to dismiss under Rule 12(b)(6). They are not extrinsic evidence incorporated into the complaint, and they were not meant to counter a possible future motion for summary judgment brought by the defendants under Rule 56. We therefore do not think that the cited documents were "integral to the complaint."[2]

---

[2] For these reasons, the district court could not have dismissed the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6); conversion to summary

But even if the full contents of these documents had been contained in the complaint, or if they had properly been treated as though they had been, we have difficulty understanding why the plaintiffs were not entitled to further notice prior to the court turning the motion to dismiss into a motion for summary judgment. The parties' memoranda and exhibits were considered simultaneously by the district court on what had appeared (other than on the veil-piercing issue) to be, until their submission in August 2005, a motion to dismiss for failure to state a claim. See Docket Entries 9-15, Sahu v. Union Carbide Corp., No. 04 Civ. 8825(JFK) (S.D.N.Y. filed Aug. 5, 2005 and Aug. 9, 2005). Following these submissions and prior to the issuance of the district court's December 1, 2005, order converting the defendants' motion and granting summary judgment, the court held no hearings or oral argument; it entertained no additional motions. Instead, it converted the Rule 12(b)(6) motion based on the allegations contained in the complaint to one for summary judgment based on the documentary evidence supplied by the defendants -- including the Sharma Affidavit and its ninety-seven exhibits from the earlier Bano litigation. The court simultaneously granted the converted motion.

While the defendants' submissions -- including the defendants' memorandum of law in support of their motion to dismiss, which discussed much of this evidence at length -- gave

judgment was necessary. Indeed, the defendants do not argue that the district court could have dismissed the plaintiffs' claims without considering the documents referenced by the complaint.

21

the plaintiffs notice that the defendants wanted the motion changed to one for summary judgment, and gave the district court the opportunity to consider the extrinsic evidence they submitted before ruling, the plaintiffs could not have known whether the court would in fact consider them, or would convert the motion into one for summary judgment in order to do so.  These submissions do not seem to us to be the equivalent of a motion to convert, or to supply notice thereof.  The plaintiffs' memorandum of law in opposition to the defendants' motion to dismiss argued that the court was not required to consider matters outside the pleadings.  They requested the opportunity to seek further discovery if the court deemed it necessary to consider extrinsic material.  <u>See</u> Memorandum in Opposition 2-5 & n.3.  It was, in sum, unclear, prior its issuance of the December 1, 2005, order, whether the district court would accept the defendants' invitation to consider the extrinsic evidence and then turn the motion into one for summary judgment.  Indeed, the defendants had argued in part that the court did not need not do so in order to rule in their favor on the non-veil-piercing claims.

We think that the title of the defendants' memorandum in support of its motion as a motion to dismiss <u>or</u> for summary judgment similarly failed to provide the plaintiffs with adequate notice.  A motion called a motion for summary judgment, whether or not stated as alternatively for dismissal, ordinarily will place a plaintiff on notice that the district court is being asked to look beyond the pleadings to the evidence in order to

22

decide the motion. In this case, however, where the plaintiffs had filed a multi-count complaint and the supporting memoranda and evidence can fairly be read to seek only dismissal under Rule 12(b)(6) on some counts and summary judgment on others, the motion papers provided insufficient notice. The plaintiffs should have been made aware that all counts could or would be decided under the summary judgment standard in order to give them the opportunity to oppose the motion with evidence and a focused argument.

The absence of any additional proceedings related to the defendants' motion prior to the district court's December 1, 2005, order distinguishes this case from our decision in G. & A. Books, relied upon by the defendants. There, the district court converted a motion to dismiss into a motion for summary judgment only after a hearing at which the non-moving plaintiffs had commented on extrinsic evidence provided by both them and the defendants, and only after the plaintiffs had requested and received an extension of time to submit additional materials. See G. & A. Books, 770 F.2d at 295; see also Condon v. Local 2944, United Steelworkers, 683 F.2d 590, 593-94 (1st Cir. 1982) (upholding the district court's decision to resolve a motion to dismiss by considering it as a motion for summary judgment where the plaintiff had been given "ample opportunity to provide the court with any relevant information outside the pleadings to raise a genuine factual issue, which he expressly represented that he was prepared to do").

23

As we emphasized in <u>First Financial Insurance Co. v.</u> <u>Allstate Interior Demolition Corp.</u>, 193 F.3d 109 (2d Cir. 1999),

> "care should, of course, be taken by the district court to determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law."

<u>Id.</u> at 115 (quoting <u>Ramsey v. Coughlin</u>, 94 F.3d 71, 73-74 (2d Cir. 1996)). Once the court decided to consider extrinsic evidence to decide a motion for summary judgment rather than limit itself to the pleadings as it would on a motion to dismiss, we think that the plaintiffs should have been given "a reasonable opportunity to meet facts outside the pleadings." <u>G. & A. Books</u>, 770 F.2d at 295.

As noted, we view this as a close case. But we think there is a reasonable likelihood that, in light of the peculiarly difficult procedural history of this and related litigation, the plaintiffs were not aware that they were in danger of an adverse grant of summary judgment based on the submissions prior to the district court's order converting the motion and then deciding it. We conclude that further notice was required and that consequently it is appropriate to remand for what would appear to be relatively limited further proceedings in connection with consideration of summary judgment.

For the foregoing reasons, the district court's judgment, insofar as it is based on the December 1, 2005, grant of summary judgment in favor of the defendants on all non-veil-

24

piercing claims, will be vacated and the cause remanded for further proceedings. And because the court's dismissal of the veil-piercing claim relies, in part, on its dismissal of the non-veila-piercing claims, we must vacate the judgment, and remand the cause, in their entirety. See Sahu III, 2006 WL 3377577, at *9, 2006 U.S. Dist. LEXIS 84475, at *27 (S.D.N.Y. Nov. 21, 2006) ("The evidence on the record contradicts such allegations [that Union Carbide dominated UCIL for the purpose of avoiding its obligations to the plaintiffs]. The Court discussed this evidence in detail in its previous decision under the umbrella of plaintiffs' other two theories of liability.").

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is vacated and the cause remanded to the district court for further proceedings.