12-2983-cv
*Sahu, et al. v. Union Carbide Corp., et al.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect.  Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1.  When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order").  A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of June, two thousand thirteen.

PRESENT:

> GUIDO CALABRESI,
> JOSÉ A. CABRANES,
> BARRINGTON D. PARKER,
> > *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JANKI BAI SAHU, on behalf of herself, her family, as guardian of her minor children, and all other similarly situated, et al.,

> *Plaintiffs-Appellants,*

> -v.-                                                                No. 12-2983-cv

UNION CARBIDE CORPORATION, WARREN ANDERSON,

> *Defendants-Appellees.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**FOR PLAINTIFFS-APPELLANTS:**       RICHARD L. HERZ (Curtis Victor Trinko, Law Offices of Curtis V. Trinko, LLP, New York, NY; H. Rajan Sharma, Neal DeYoung, Sharma & DeYoung LLP, New York, NY; Matthew K. Handley, Thomas N. Saunders, Cohen Milstein Sellers & Toll PLLC, Washington, DC; Richard S. Lewis, Reena A. Gambhir, Hausfeld LLP, Washington, DC, *on*

the *brief*) EarthRights International, Washington, DC.

FOR DEFENDANTS -APPELLEES:                WILLIAM A. KROHLEY (William C. Heck, *on the brief*), Kelley Drye & Warren, LLP, New York, NY.

Appeal from the June 27, 2012 judgment of the United States District Court for the Southern District of New York (John F. Keenan, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the June 27, 2012 judgment of the District Court be **AFFIRMED**.

Plaintiff Janki Bai Sahu and several others similarly situated (referred to together as "Sahu") bring this tort suit to recover from injuries allegedly caused by exposure to soil and drinking water polluted by hazardous wastes produced by the Union Carbide India Limited ("UCIL") pesticide plant ("Bhopal plant" or "plant") in Bhopal, India. Sahu seeks monetary damages and an injunction requiring remediation and medical monitoring from the Union Carbide Corporation ("Union Carbide"), which was formerly a majority owner of UCIL, and from Warren Anderson (together with the Union Carbide Corporation, "UCC"), Union Carbide's former CEO. Sahu now appeals from an order of the District Court granting summary judgment to UCC.

## BACKGROUND

### A. Factual History

UCIL was incorporated in India in 1934. The Bhopal plant was built in 1969 to produce "Sevin," a pesticide patented by Union Carbide, which then owned 60% of UCIL. At that time, the plant functioned only to mix several chemical components produced elsewhere into the final formula for Sevin. In 1973, however, UCIL began a project to "back-integrate" the plant so that it could produce the components of the pesticide itself, in compliance with a mandate by the Government of India to replace imports with local manufacture. In order to raise money for this project, UCIL issued new stock, reducing Union Carbide's ownership stake from 60% to 50.9%.

As part of the production of chemical pesticides, the plant created harmful waste. Solid waste was disposed of in tanks and pits, while waste water was treated and pumped into three solar evaporation ponds lined with low-density black polyethylene sheets to prevent seepage into the ground. Sahu claims that the hazardous waste did, in fact, escape into the ground, contaminating the soil and wells in the surrounding area. Sahu further alleges that, because local residents had no

choice but to continue to use the water from these wells, over time they suffered ailments including reproductive and neurological impairments, respiratory tract irritation, skin lesions, headaches, and cancers.

Sahu identifies several actions taken by UCC which, in her view, contributed to the contamination of the local drinking water. As construed by Sahu, the evidence in this case demonstrates that UCC (as opposed to UCIL) did the following: (1) approved UCIL's plan to retrofit the plant in order to manufacture pesticides, knowing full well that the manufacturing of pesticides, if not handled properly, can result in harmful pollution; (2) sold to UCIL the technology for manufacturing pesticides knowing the same; (3) provided UCIL with basic designs for the disposal of waste products knowing full well that the improper implementation of waste disposal designs can result in harmful pollution; and (4) provided guidance and advice to UCIL regarding remediation of the polluted site.

In 1984, a catastrophic gas leak occurred at Bhopal[1] and the Indian Government shut the Bhopal plant down. In 1994, Union Carbide sold its interest in UCIL, which subsequently changed its name to Eveready Industries India Limited ("EIIL"). In 1998, EIIL terminated its lease of the Bhopal plant site. EIIL continues to produce batteries and flashlights in India.

### B. Procedural History

This case has an extensive procedural history, and several events are salient here. Sahu and her fellow plaintiffs in this case were initially putative members of an earlier class action, styled *Bano v. Union Carbide Corporation*, which was filed in November of 1999 and also sought damages relating to the operation of the Bhopal plant. That suit was ultimately dismissed on several grounds, including the expiration of the statute of limitations. Sahu and her fellow plaintiffs here, whose claims were not barred by the statute of limitations, filed this action in the Southern District of New York in November of 2004.

On December 1, 2005, the District Court addressed UCC's motion to dismiss and/or for summary judgment. *See Sahu v. Union Carbide Corp.*, 418 F. Supp. 2d 407 (S.D.N.Y. 2005) ("*Sahu I*"). The District Court converted the motion into one for summary judgment, and granted UCC summary judgment on all claims, save for Sahu's claim that UCC could be held liable by piercing the so-called corporate veil. On that claim only, the District Court granted Sahu's motion for a stay in order to conduct additional discovery. After an additional course of discovery directed at the veil-piercing issue, the District Court granted UCC's renewed motion for summary judgment and

---

[1] As explained above, this suit does not relate to the gas leak disaster. Rather, Sahu claims only that her injuries were caused by toxic substances which were created by the plant and which seeped into the soil and drinking water supply for the nearby communities.

dismissed the case in its entirety. *See Sahu v. Union Carbide Corp.*, No. 04 Civ. 8825(JFK), 2006 WL 3377577 (S.D.N.Y. Nov. 20, 2006) ("*Sahu II*").

Sahu then appealed. On November 3, 2008, we vacated the judgment of the District Court on the ground that the District Court did not give Sahu sufficient notice to permit an adequate response before converting UCC's motion into one for summary judgment. *See Sahu v. Union Carbide Corp.*, 548 F.3d 59, 66-70 (2d Cir. 2008) ("*Sahu III*"). We explained that, although it is "a close case[,] . . . we think there is a reasonable likelihood that, in light of the peculiarly difficult procedural history of this and related litigation, the plaintiffs were not aware that they were in danger of an adverse grant of summary judgment based on the submissions prior to the district court's order converting the motion and then deciding it." *Id.* at 70. We went on to express our view that "it is appropriate to remand for what would appear to be relatively limited further proceedings in connection with consideration of summary judgment." *Id.*

Despite this supposition, upon remand, Sahu proceeded, in the words of the District Court, to "embark[ ] on a discovery expedition worthy of Vasco de Gama." *Sahu v. Union Carbide Corp.*, No. 04 Civ. 8825(JFK), 2012 WL 2422757, at *2 (S.D.N.Y. June 26, 2012) ("*Sahu IV*"). This new discovery period included numerous discovery motions decided either by the District Court or by the assigned magistrate judge, as well as one motion filed by Sahu for Judge Keenan to reassign the case to another district judge. That motion was denied.

Finally, at the close of this extended discovery period, the District Court once again considered UCC's motion for summary judgment. *See Sahu IV*, 2012 WL 2422757. On June 26, 2012, the District Court granted the motion in its entirety, concluding that Sahu had failed to adduce any evidence from which a reasonable juror could find that UCC was directly involved in the allegedly tortious conduct or should be held liable on any theory of indirect liability, and again dismissed the case. The District Court entered judgment on June 27, 2012. We now consider Sahu's appeal from that judgment.

## DISCUSSION

Sahu makes three broad arguments on appeal: (1) the District Court erred in granting summary judgment to UCC; (2) the District Court erred in denying certain of Sahu's motions for additional discovery; and (3) the District Court erred in declining to reassign the case to a different judge after the cause was remanded. Each argument is addressed in turn.

### A. Summary Judgment

Sahu first claims that the District Court erred by awarding summary judgment to UCC. "We

4

review *de novo* a district court's grant of summary judgment after construing all evidence, and drawing all reasonable inferences, in favor of the non-moving party." *Sotomayor v. City of New York*, 713 F.3d 163, 164 (2d Cir. 2013). Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Sahu argues that the District Court improperly granted summary judgment on her theories of both direct and indirect liability.

## 1. Direct Liability

Sahu contends that UCC may be held directly liable for the nuisance[2] created by the leakage of the hazardous waste because UCC (1) approved that plan to back-integrate the plant; (2) transferred certain waste-producing technology to UCIL; (3) participated in designing the plant's waste disposal system; and (4) participated in the inadequate clean-up of the site once the plant was shut down. *See* Sahu Br. 41-57. Sahu argues that the District Court took an unduly narrow view of who may be held liable for creating a nuisance and that she had adduced sufficient facts for a reasonable juror to find that UCC had participated in the creation of the nuisance. *See* Sahu Br. 39-40.

New York[3] recognizes two entirely separate causes of action for "nuisance," both of which have been alleged by Sahu: public nuisance and private nuisance. A public nuisance "is an offense against the State and is subject to abatement or prosecution on application of the proper governmental agency . . . . It consists of conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all . . . in a manner such as to offend public morals, interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons." *Copart Indus. v. Consol. Edison Co. of N.Y.*, 41 N.Y.2d 564, 568 (1977). By contrast, a "private nuisance threatens one person or a relatively few . . ., an essential feature being an interference with the use or enjoyment of land . . . . It is actionable by the individual person or persons whose rights have been disturbed." *Id.*

---

[2] Sahu's complaint also alleges negligence and strict products liability. *See* Joint App'x 58-62. The District Court stated that the claims "generally sound in nuisance," Special App'x 70, and Sahu does not argue for products liability on appeal. Sahu does contend, briefly, that UCC may be held liable for negligence for the same acts for which it may be held liable for nuisance. *See* Sahu Br. 54-57. Sahu's negligence claim fails for the same reason as does her nuisance theory—namely that any actions taken by UCC did not legally cause the pollution complained of.

[3] The parties do not dispute that New York law controls. *See* Sahu Br. 39-40; UCC Br. 17; *see also* Joint App'x 70.

5

Sahu appears to focus on public nuisance,[4] and emphasizes that "everyone who creates a nuisance or *participates in the creation or maintenance of a nuisance* are liable jointly and severally for the wrong and injury done thereby." *State v. Schenectady Chems., Inc.*, 459 N.Y.S.2d 971, 976 (N.Y. Sup. Ct. 1983) (emphasis supplied). However, New York's First Department has cautioned that courts are not to lay aside traditional notions of remoteness, proximate cause, and duty when evaluating public nuisance claims. *People ex rel. Spitzer v. Sturm, Ruger & Co., Inc.*, 761 N.Y.S.2d 192, 199, 200-02 (1st Dep't 2003); *see also id.* at 198 n.2 (explaining that public nuisance claims generally may proceed where they "involve specific harm directly attributable to defendant or defendant's activity"). Thus, the question here is whether UCC played a sufficiently direct role in causing the hazardous wastes to seep into the ground to be held liable. *Cf. State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1052 (2d Cir. 1985) (holding a corporate officer individually liable without piercing the corporate veil because he "specifically direct[ed], sanction[ed], and actively participate[d] in [the] maintenance of the nuisance.").

We conclude, substantially for the reasons set out at length in the District Court's clear and thorough Opinion and Order of June 26, 2012, that under either public or private nuisance no reasonable juror could find that UCC participated in the creation of the contaminated drinking water. *See Sahu IV*, 2012 WL 2422757, at *5-16. Neither UCC's approval of the plan to "back-integrate" the plant, nor its transfer of technology for pesticide manufacture, nor its designs for a waste disposal system, nor its limited involvement in remediation amount to participation in the failure of the evaporation ponds to contain the hazardous waste.

We note in particular that it is clear from the undisputed facts that UCIL, and not UCC, designed and built the actual waste disposal system and Sahu points to nothing in the record (or even in the Complaint) that suggests that the mere idea to use evaporation ponds as a means to dispose of wastewater was a cause of the hazardous conditions. *See* Joint App'x 30 (alleging that UCC was aware that toxic waste was leaching into the soil and groundwater because the *lining* of the solar evaporations ponds had developed leaks). In short, no reasonable juror could find that the actions taken by UCC legally caused or otherwise indicated UCC's participation in the creation of the nuisance.

## 2. Indirect Liability

Sahu also sets forth several theories for holding UCC liable for the negligence of or nuisance created by its subsidiary: "concerted action," "agency liability," and "piercing of the corporate veil."

---

[4] Generally, "[a] public nuisance is actionable by a private person only if it is shown that the person suffered special injury beyond that suffered by the community at large." *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 292 (2001). However, UCC has not questioned whether Sahu has a right of action for public nuisance, and we assume, without deciding, that she may bring such a suit.

6

The District Court rejected each claim, concluding (1) that Sahu had adduced no evidence that UCC committed a tort, as required for "concerted action"; (2) that there was nothing in the record to show that UCIL manufactured pesticides on UCC's behalf, or that UCC maintained control over UCIL's operations, as required for "agency liability"; and (3) that Sahu had failed to adduce evidence that UCC exercised complete domination over UCIL with respect to the transaction at issue and that such domination was used to commit a fraud or wrong, as required to "pierce the corporate veil." *See Sahu IV*, 2012 WL 2422757, at *16-21.

We find no error in the District Court's legal conclusions and, based upon an independent review of the record, conclude that no reasonable juror could find for Sahu on any of these theories. Accordingly, we affirm the order of the District Court granting summary judgment to UCC.[5]

## B. Discovery Motions

Sahu next claims that the District Court erred in denying several motions for additional discovery pursuant to Federal Rule of Civil Procedure 56(d).[6] "We review discovery rulings for abuse of discretion." *SEC v. Rajaratnam*, 622 F.3d 159, 180 (2d Cir. 2010) (quotation marks omitted); *see also In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (explaining the term of art "abuse of discretion" and noting that a district court is said to "abuse its discretion" if it "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions" (internal citation and quotation marks omitted)).

---

[5] Because Sahu is not entitled to relief for the reasons explained above, we need not address her separate claim that the District Court erred in denying her injunctive relief on the alternate ground that remediation and medical monitoring would be impracticable. Nonetheless, we see no reason that we would depart from the logic of our prior decision in *Bano v. Union Carbide Corp.*, 361 F.3d 696, 713-17 (2d Cir. 2004), where we affirmed this District Court's ruling in a separate, but related case that remediation in Bhopal would be an impracticable remedy. In other words, there was no error, let alone an "abuse of discretion," in the District Court's decision to deny injunctive relief on this alternate ground. *See Carlos v. Santos*, 123 F.3d 61, 67 (2d Cir. 1997) ("We review a denial of a request for a permanent injunction for abuse of discretion.").

[6] In relevant part, Rule 56 provides:

**When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

    **(1)** defer considering the motion or deny it;

    **(2)** allow time to obtain affidavits or declarations or to take discovery; or

    **(3)** issue any other appropriate order.

Fed. R. Civ. P. 56(d). Sahu actually brought her motions for additional discovery in the District Court pursuant to what was then Rule 56(f). However, in 2010, after the District Court decided those motions, Rule 56 was amended such that "[s]ubdivison (d) carries forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. P. 56, advisory committee's note (2010 amends.).

The only discovery decision that Sahu specifically challenges is the District Court's refusal to permit certain Rule 30(b)(6)[7] depositions, including of Warren Anderson. The District Court denied Sahu's requests for these depositions, finding them to be "unduly burdensome." Special App'x 34. The District Court further explained:

> [T]he depositions would require Defendants to prepare witnesses to respond to questions regarding events that took place between fifteen and thirty-five years ago. Not only would this be difficult and costly, but the benefit to the Plaintiffs would likely be extremely low: no witness can be expected to provide accurate and detailed accounts of events so far in the past. Furthermore . . ., the Court is granting Plaintiffs limited document discovery—this discovery is a more convenient, less costly, and less burdensome alternative to the depositions.

*Id.*

Sahu now contends that it was improper for the District Court to deny these depositions, relying on *In re Dana Corp.*, 574 F.3d 129, 149-50 (2d Cir. 2009), for the proposition that documents are not a permissible alternative to depositions. *See* Sahu Br. 36. While it is true that we indicated in that case that "[n]o one type of discovery is *necessarily* an adequate substitute for another," *In re Dana Corp.*, 574 F.3d at 150 (emphasis supplied), we also explained that "[a] court plainly has discretion to reject a request for discovery if the evidence sought would be cumulative or if the request is based only on speculation as to what potentially could be discovered, . . . and a bare assertion that the evidence supporting plaintiff's allegations is in the hands of the moving party is insufficient to justify the denial of summary judgment," *id.* at 148-49 (internal quotation marks and citation omitted). Sahu has not explained why the depositions would not be cumulative, why the request was not purely speculative, or why, in light of the extensive discovery permitted in this case, she was not afforded a reasonable opportunity to elicit information from UCC. *See id.* at 149.

Sahu also generally objects to the rest of the District Court's discovery rulings on the ground that the District Court "denied documents central to the issues it decided against plaintiffs." Sahu Br. 38. However, Sahu offers no support for the rather illogical notion that the denial of a discovery

---

[7] Federal Rule of Civil Procedure 30(b)(6) reads:

**Notice or Subpoena Directed to an Organization.** In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

8

motion entitles the movant to go to trial on any related claim. The question is not whether Sahu would like more discovery, but rather, whether the District Court abused its discretion in denying her request. *See Rajaratnam*, 622 F.3d at 180; *In re Dana Corp.*, 574 F.3d at 148-49. Sahu has made no such showing.

## C. Reassignment

Finally, Sahu contends that the District Court should have granted her motion to reassign the case to another judge. As the District Court noted, "a motion for reassignment is generally addressed to the appellate court, which may reassign a case to another district judge on remand." Special App'x 39. Sahu identifies no authority which would permit a district court to grant such a motion to reassign, and we therefore find no error in the District Court's denial of Sahu's motion. Even if Sahu had filed a motion for recusal, "which we review for abuse of discretion," *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 107 (2d Cir. 2012), we would have no reason to think that "an objective, disinterested observer fully informed of the underlying facts, would entertain significant doubt that justice would be done absent recusal," *id.* (internal quotation marks and brackets omitted). In sum, we identify no error, let alone an abuse of discretion, in the District Court's denial of the "motion for reassignment."

## CONCLUSION

Sahu and many others living near the Bhopal plant may well have suffered terrible and lasting injuries from a wholly preventable disaster for which someone is responsible. After nine years of contentious litigation and discovery, however, all that the evidence in this case demonstrates is that UCC is not that entity. Accordingly, and for the reasons set out above, we **AFFIRM** the June 27, 2012 judgment of the District Court.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court

9